| | |
|---|---|
| District Court, City and County of Denver, Colorado<br>1437 Bannock Street<br>Denver, CO 80202<br><br>———————————————<br><br>**Plaintiff:**<br>MICAH KIMBALL,<br><br>v.<br><br>**Defendant(s):**<br>Officer Daniel Fox, Officer Jami Sisneros, Officer Randal Denison, Officer Sean Kelly, Officer Scott Hagan, Officer John Meoni, Denver Police Department Chief Paul Pazen, the Denver Police Department and the City of Denver, Colorado. | DATE FILED: December 3, 2021 1:06 PM<br>FILING ID: 511E21DA14C1E<br>CASE NUMBER: 2021CV33851<br><br><br><br><br><br><br>▲ COURT USE ONLY ▲ |
| Counsel for Plaintiff:<br>David A. Lane, #16422<br>Killmer Lane & Newman, LLP<br>1543 Champa Street Suite 400<br>Denver, CO 80202<br>Phone:  (303) 571-1000<br>Fax.:    (303) 571-1001<br>Email:  dlane@kln-law.com<br><br>Jane Fisher-Byrialsen, # 49133<br>Fisher & Byrialsen, PLLC<br>4600 S. Syracuse Street, 9th Floor<br>Denver, CO 80237<br>Phone: (303) 256-6345<br>Email: Jane@FBLaw.org<br><br>Hollis A. Whitson, #32911<br>Samler and Whitson, PC<br>1600 Stout Street, Suite 1400<br>Denver, CO 80202<br>Phone: 303-670-0575<br>Email: Hollis@SamlerandWhitson.com | Case Number:<br><br><br><br><br>Division            Courtroom |
| **COMPLAINT AND JURY DEMAND** | |

**EXHIBIT A**

Plaintiff, through his attorneys David A. Lane of Killmer, Lane & Newman, LLP, Jane Fisher-Byrialsen of Fisher & Byrialsen, PLLC, and Hollis Whitson of Samler & Whitson, PC, respectfully allege for their Complaint and Jury Demand as follows:

## INTRODUCTION

1.      On or about September 27, 2019, Michelle Jacobson tragically killed herself in the Denver home she shared with her fiancé, Plaintiff Micah Kimball. At the time of Ms. Jacobson's suicide, she and Mr. Kimball were alone in the house. The police were called to the scene by Mr. Kimball and a neighbor.  Immediately upon the police's arrival at Mr. Kimball's home, Mr. Kimball was held at gunpoint, handcuffed and arrested. Mr. Kimball was placed in a locked police car.  But, before being put in the locked police car, plastic bags were placed over his hands (in order to preserve any evidence of gunshot residue on his hands). Despite abundant evidence to the contrary, including expert opinions by Angela Deadmond[1] that Ms. Jacobson's cause of death was suicide, Mr. Kimball was charged with first degree murder.  Mr. Kimball was held without bail for approximately 72 days and maliciously prosecuted and defamed by the Defendants.  During the course of Mr. Kimball's prosecution, Defendants purposely withheld exculpatory evidence from Mr. Kimball and his defense attorneys.

2.      The false charges resulted in Mr. Kimball being arrested, held in jail for 72 days, and having to defend against the false and baseless charges.  The false accusations and the malicious prosecution of Mr. Kimball are the product of significant malfeasance, lies and manipulation of the justice system.

3.      Plaintiff brings this action to seek accountability from the Defendants and their commanders Mr. Kimball's long ordeal.

4.      This action is brought under Colorado Revised Statute section 13-21-131 against several Denver police officers for unlawful seizure, malicious prosecution, and conspiracy to violate Mr. Kimball's constitutional rights in violation of the Colorado Constitution, article II, sections 7 and 25.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under Colo. Rev. Stat. § 13-1-124(b).

6.      Venue is proper under C.R.C.P. 98(c)(5).

---

[1] At the time, Deadmond was the Deputy Director of the Denver Crime Lab (second in command) who was a Crime Scene Analyst on the case.

## PARTIES

7.      At all times relevant to this Complaint, Plaintiff Micah Kimball was a citizen and resident of the State of Colorado.

8.      At all times relevant to this Complaint, Defendant Officer Randal Denison was acting within the scope of his official duties and employment and under color of state law in his capacity as a DPD police officer.  At all relevant times, Defendant Denison was a citizen of the United States and resident of the State of Colorado.  Defendant Randal is being sued in his official and individual capacity.

9.      At all times relevant to this Complaint, Defendant Officer Daniel Fox was acting within the scope of their official duties and employment and under color of state law in his capacity as a DPD police officer.  At all relevant times, Defendant Fox was a citizen of the United States and resident of the State of Colorado.  Defendant Fox is being sued in his official and individual capacity.

10.     At all times relevant to this Complaint, Defendant Officer Jami Sisneros was acting within the scope of her official duties and employment and under color of state law in his capacity as a DPD police officer. At all relevant times, Defendant Sisneros was a citizen of the United States and resident of the State of Colorado.   Defendant Sisneros is being sued in her official and individual capacity.

11.     At all times relevant to this Complaint, Defendant Officer Sean Kelly was acting within the scope of his official duties and employment and under color of state law in his capacity as an APD police officer. At all relevant times, Defendant Kelly was a citizen of the United States and resident of the State of Colorado.  Defendant Kelly is being sued in his official and individual capacity.

12.     At all times relevant to this Complaint, Defendant Officer Scott Hagan was acting within the scope of his official duties and employment and under color of state law in his capacity as a DPD police officer. At all relevant times, Defendant Hagan was a citizen of the United States and resident of the State of Colorado.  Defendant Hagan is being sued in his official and individual capacity.

13.     At all times relevant to this Complaint, Defendant Officer John Meoni was acting within the scope of his official duties and employment and under color of state law in his capacity as a DPD police officer. At all relevant times, Defendant Meoni was a citizen of the United States and resident of the State of Colorado.  Defendant Meoni is being sued in his official and individual capacity.

14.     At all times relevant to this Complaint, Defendant DPD Chief Paul Pazen was acting within the scope of his official duties and employment and under color of state law in his capacity as Chief of Police for DPD. Defendant Pazen is being sued in his official capacity.  At

all relevant times, Defendant Pazen was a citizen of the United States and resident of the State of Colorado.

15.     At all relevant times, Defendant Chief Pazen had the authority and obligation to make and enforce policy for, train, supervise, oversee, and discipline all DPD officers, including Officer Defendants.

16.     Defendant Officers Denison, Fox, Sisneros, Kelly, Hagan and Meoni are collectively known herein as "Officer Defendants."

## FACTUAL ALLEGATIONS

17.     On September 27, 2019, Plaintiff Micah Kimball's life was changed forever when his fiancé committed suicide by shooting herself in the head. His call to police, which was supposed to bring emergency assistance, turned into a nightmare that to this day has not ended.

18.     On that same day (September 27, 2019), Mr. Kimball was arrested and accused of murdering his fiancé, Michelle.

19.     On or about September 30, 2019, Defendant Meoni spoke with Medical Examiner Dr. Dawn Holmes, who refused to rule it a homicide.

20.     On October 3, 2019, Senior Crime Scene Investigator ("CSI") Angela Deadmond examined Mr. Kimball's clothing for blood spatter that would have been consistent with a high impact incident such as firing a gun and hitting a person. No blood spatter was found on Mr. Kimball's clothes consistent with a high impact incident.  The defendant officers were aware of these facts.

21.     CSI Deadmond was credentialed in blood stain analysis and served as the Deputy Director of the Denver Crime Lab.  In fact, CSI Deadmond was the only CSI at the Denver Crime Lab qualified to conduct bloodstain pattern analysis and bloodstain pattern documentation.

22.     On October 14, 2019, the Denver Crime Lab issued a Summary Report regarding gunshot residue (hereinafter "GSR") on Mr. Kimball's hands and face. There was no GSR on Mr. Kimball's hands or face. The defendant officers were aware of these facts.

23.     On October 16, 2019, Dr. Dawn Holmes emailed Defendants Sisneros and Meoni that she is signing out the case, and she would be happy to discuss anything including the toxicology and the opinion/note section of the autopsy report. Dr. Holmes indicated she would call Defendant Sisneros to keep her in the loop because Defendant Meoni was on vacation.

24.     On October 16, 2019, Dr. Holmes signed the autopsy report, without being made aware of the Denver Crime Lab's forensic analysis or results.

4

25.     On or about October 18, 2019, Deadmond told the Defendants that the crime scene evidence did not support a theory of homicide but that the gunshot wound was self-inflicted.

26.     On October 18, 2019, in an email to Deputy District Attorney Daniel Cohen, Defendant Meoni stated there was no concrete evidence of a homicide.

27.     On October 22, 2019, the Denver Crime Lab issued a Summary Report regarding GSR on Mr. Kimball's shorts, stating the test revealed the presence characteristic of gunshot primer residue but providing no details. The details would have shown that the lab did not package Mr. Kimball's clothing in accordance with appropriate Gun Shot Residue protocols, and that Mr. Kimball's shorts had a tiny spec of particles characteristic of GSR.  The Lab Report includes that the particles could have resulted from possible incidental contact with Ms. Jacobson while Mr. Kimball was rendering aid, but also from being exposed to GSR from walking into the bedroom after Ms. Jacobson shot herself, from direct contact of armed police officers, or with the police car or while being detained at the police station.

28.     On October 22, 2019, the Denver Crime Lab issued a Summary Report regarding GSR on Michelle Jacobson's hands, face and GSR bags, stating the test revealed the presence of Gun Shot Residue Particles in all places.  The details would have shown that there was a substantial amount of GSR on her hands and face consistent with a suicide.

29.     On October 24, 2019, the Denver Crime Lab issued a Summary Report regarding GSR on Mr. Kimball's shirt, stating the test was "positive" but providing no details. The details would have shown that there was essentially a tiny spec of GSR on the shirt.

30.     On November 6, 2019, Mr. Kimball's defense attorney Iris Eytan, from whom the above detailed information was being withheld by the Defendants, emailed Chief Deputy District Attorney Dan Cohen, asking: "Where is Detective Denison's and Detective Sisneros' report? …. "Update on the Autopsy Report?"

31.     On November 7, 2019, DDA Dan Cohen responded to Ms. Eytan that he had communicated with Defendants Meoni and Sisneros and below are [their] answers: "Autopsy report not completed yet.  It usually takes about 6 to 8 weeks for toxicology to come back." The autopsy report, however, had been completed, including the receipt of the toxicology results showing Ms. Jacobson had a significantly high blood alcohol level and had been under the influence of benzodiazipenes. And, although the report was purportedly going through peer review, the Defendants knew the toxicology results and opinions of the forensic pathologist.  The Defendants' statements were completely false.

32.     On November 13, 2019, Ms. Eytan emailed DDA Dan Cohen, observing that a critical court hearing was slated to begin on November 15, 2019, and that "Detective Meoni (and or the investigators and lab personnel) possess exculpatory evidence whether by documents or

conversations with witnesses that have not been reduced to writing, or if they have, have not been produced." Ms. Eytan requested that the material be provided by the next day (November 14, 2019), and she provided a list of the items that had not yet been disclosed, including:

1.  The Autopsy.

2.  The substance of conversations that law enforcement has had with members of witnesses/Coroner's office regarding the autopsy and manner of death. This includes the "note" Meoni refers to as far as the manner of death.

3.  The Death Certificate.

4.  Any records returned from the Blink Search Warrant (or the status)

5.  The substance and recordings of interviews with all witnesses. This all recordings in the November 7 email identified in #1. This also includes the substance and recordings of interviews law enforcement conducted with Michelle Jacobson's family.

6.  The GSR Bench notes and prosecution witnesses' communications with Lab personnel (witnesses) regarding the GSR results.

7.  Medical records/and or evidence of the hospital's refusal to provide upon request- confused about why there is a delay.

8.  Any additional information on any additional requests made of the lab not yet discovered, and/or any results provided to Meoni/law enforcement/you and not yet discovered.

33.     On November 13, 2019,  DDA Dan Cohen responded to Ms. Eytan's email, stating "…I spoke to OME and we will stipulate the cause/manner of death is undetermined at this point." DDA Dan Cohen also wrote: "All Detective Meoni's conversations with the family were not investigative, they were not interviews…" and "Detective Denison has not completed a write up and is on vacation, but his write up concerns the scene which has already been extensively documented through CSU and Det. Sisneros."

34.     At the very least, it should have been readily apparent to Officer Defendants that there was no murder and Mr. Kimball should not be a murder suspect.  Nevertheless, Officer Defendants seized Mr. Kimball and then prolonged his unlawful seizure long after Officer Defendants knew or should have known that they had no probable cause or even reasonable suspicion to detain Plaintiff.

35.     None of the Officer Defendants were disciplined or placed on leave, and all continue to work as DPD police officers.

36.     Within weeks of Mr. Kimball's arrest on September 27, 2019, after reviewing the forensic and scene evidence, Chief Deputy CSI Angela Deadmond told the Defendants that she did not believe that Mr. Kimball's fiancé died as a result of homicide but rather, believed she died from suicide.  As CSI Deadmond explained to prosecutors for the second time on June 30, 2020: "Based on the totality of the evidence (scene/autopsy photographs, measurements from FARO, suspect's clothing) I didn't believe the evidence supported the theory that it was a homicide when discussed with the assigned detectives weeks following the incident."

37.     Defendant Meoni withheld his opinion, and CSI Deadmond's opinion, not only from Mr. Kimball and his defense counsel, but from the forensic pathologist, and the Court when the Court made its determination of probable cause on December 3, 2019.  Contrary to what the State's bloodstain pattern expert told him, Defendant Meoni misled the Court when he testified at the Preliminary Hearing.

38.     If Mr. Kimball had known the prosecution's expert had this opinion in October 2019, the defense would have raised this at the Preliminary Hearing and argued that it clearly showed there was no probable cause. Mr. Kimball would not have had to endure the stress, time, and financial strain of hiring his own crime scene experts and litigating his Murder charge through a jury trial.

39.     The allegations in this complaint are part of a course of ongoing conduct that did not terminate until Mr. Kimball's acquittal in August 2020.


## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unlawful Seizure**
**(Colo. Const., article II, Section 7; Colo. Rev. Stat. § 13-21-131)**


40.     Mr. Kimball hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

41.     The Individual Defendants acted under color of state law and within the course and scope of their employment as DPD law enforcement officers at all times relevant to the allegations in this Complaint.

42.     At all relevant times, the Individual Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

43.     Mr. Kimball had a protected interest under the Colorado Constitution, article II, §7 in being secure in his person from unreasonable seizures by law enforcement personnel.

44.     Officer Defendants, acting in concert with one another, unreasonably seized and detained Mr. Kimball, in violation of the Constitution of the State of Colorado.

45.     Officer Defendants deprived Mr. Kimball of his freedom of action for a sustained period of time.

46.     Officer Defendants did not, at any time during their encounter with Mr. Kimball, have probable cause or reasonable suspicion, or any other legally valid basis, to believe that any Mr. Kimball had committed, was committing, or was about to commit any violation of the law.

47.     Officer Defendants did not at any time have a reasonable basis for believing that Mr. Kimball was a danger to himself.

48.     Officer Defendants did not at any time have a warrant authorizing any seizure of Mr. Kimball.

49.     Officer Defendants seized Mr. Kimball against his will, despite lacking any legally valid basis for the seizure.

50.     Officer Defendants violated Mr. Kimball's state constitutional rights by engaging in an unlawful seizure of Mr. Kimball that was objectively unreasonable in light of the facts and circumstances confronting Officer Defendants before and during their encounter with Mr. Kimball.

51.     Officer Defendants engaged in a collective plan or effort to seize Mr. Kimball without probable cause or reasonable suspicion, or alternatively, each Defendant Officer failed to take reasonable steps to intervene in the other Officer Defendants' unlawful seizure of Mr. Kimball, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the objectively unlawful and unreasonable arrest and seizure of Mr. Kimball.

52.     Officer Defendants subjected or caused Mr. Kimball to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

53.     Officer Defendants did not act upon a good faith and reasonable belief that their actions in seizing Mr. Kimball without probable cause or reasonable suspicion were lawful.

54.     The acts or omissions of the Officer Defendants were the moving force behind, and the proximate cause of, injuries sustained by Mr. Kimball.

55.     The Defendants intended to restrict Mr. Kimball's freedom of movement;

56.     The Defendants, directly or indirectly, restricted Mr. Kimball's freedom of movement for a period of time, no matter how short;

57.     The Defendants acted with malice or ill will or under a mistaken belief that he or she is privileged to restrict the other's freedom of movement.

58.     Mr. Kimball was aware that his freedom of movement was restricted.

59.     Defendant Pazen failed to reasonably train and supervise DPD officers, including Officer Defendants, in specific issues relating to seizures without probable cause or reasonable suspicion, despite the obvious need to do so.

60.     Defendant Pazen knew or should have known that his failure to adequately supervise and train DPD officers in such issues relating to unlawful seizures was likely to harm individuals like Mr. Kimball; it was reasonably foreseeable that her failures in these areas would cause the harm or a similar harm that Mr. Kimball has suffered, is suffering, and will suffer.

61.     In failing to reasonably train and supervise DPD officers, including Officer Defendants, in such issues relating to unlawful seizures, Defendant Pazen caused Plaintiff to be subjected to the deprivation of his rights to be secure in his person against unreasonable seizures, as guaranteed by the Colorado Constitution, article II, § 7.

62.     Defendant Pazen's actions and omissions violated Plaintiff's state constitutional rights and were a substantial and significant contributing cause and proximate cause of Plaintiff's damages.

63.     Defendant Pazen did not act upon a good faith and reasonable belief that his actions and omissions in failing to adequately train and supervise DPD officers in this area were lawful.

64.     Defendant City of Denver is liable for the acts and omissions of its agents and/or employees, and for the herein described acts by Individual Defendants, who were acting within the scope and course of their employment.

65.     The Individual Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Individual Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

## SECOND CLAIM FOR RELIEF

### Malicious Prosecution
### (Colo. Rev. Stat. § 13-21-131)

66.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

67.     A criminal case was brought against the plaintiff;

68.     The criminal case was brought as a result of oral and/or written statements made by the Defendants;

69.     The criminal case ended in favor of the plaintiff;

70.     Defendants' statements against the plaintiff were made without probable cause;

71.     The charges consisted of knowing falsehoods told by the Defendants;

72.     The Defendants' statements against the plaintiff were motivated  by malice towards the plaintiff; the defendants' primary motive was a motive other than a desire to bring to justice a person they thought had committed a crime.

73.     The Defendants did not in good faith believe that Plaintiff was guilty of the offenses with which he was charged;

74.     A reasonable person, under the same or similar circumstances and with knowledge of the true facts, would not have believed that the plaintiff was guilty of the offense with which he was charged.

### THIRD CLAIM FOR RELIEF

### Failure to Intervene
### (Colo. Rev. Stat. § 13-21-131)

75.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

76.     Each of the defendant officers had an affirmative duty to intervene to protect Mr. Kimball and his constitutional rights from infringement by the others.

77.     Each of the defendant officers had the opportunity to intervene and prevent the harm;

78.     A reasonable person in each of the officer's positions would know that Mr. Kimball's constitutional rights were being violated and that he was being subjected to the violations and damages outlined in this Complaint

79.     Each officer failed to take reasonable steps to intervene.

## FOURTH CLAIM FOR RELIEF

### Conspiracy
### (Colo. Rev. Stat. § 13-21-131)

80.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

81.     Defendants, with other investigative, supervisory, and command personnel, together and under the color of law, reached an understanding, consciously conspired and combined and deliberately pursued a common plan or design, engaged in a course of conduct, acted in concert, and otherwise conspired among and between themselves to:

- deprive Plaintiff of his Constitutional rights, and did deprive him of said rights, including, but not limited to, his right to be free from false arrest, free from violation of his substantive due process rights, free from fabrication of evidence, and free from arrest and prosecution by false statements and omissions in the application for arrest warrant, as protected by Article II, Sections 3, 7 and 25 of the Colorado Constitution.

- fraudulently make use of legal proceedings;

- defraud, cheat, and wrong the plaintiff by procuring a judgment against him;

- To maliciously prosecute him;

- To falsely arrest him;

- To present false evidence;

82.     In furtherance of the conspiracies, the Defendants and others, committed the overt acts set, utilized the improper means forth above, and/or conspired for the unlawful goals set forth above, including but not limited to: the false arrest of Plaintiff, the violation of his due process rights, engaging in conduct that shocks the conscience in violation of Plaintiff's Substantive Due Process rights under Article II of the Colorado Constitution, fabricating evidence, withholding exculpatory evidence, and knowingly and intentionally, or with reckless disregard for the truth, making false statements in the underlying criminal case.

83.     These conspiracies and overt acts were continuing in nature, and caused Plaintiff constitutional violations and injuries, pain, suffering, fear, mental anguish, incarceration, humiliation, defamation of character and reputation, and loss of freedom and income, as set forth above.

## DAMAGES

84.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

85.     Plaintiff has suffered and will probably suffer in the future, damages including: physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, impairment of the quality of life, and loss of freedom, employment, and income.

86.     As a result of the above acts, the plaintiff suffered damages. These damages include

- **noneconomic losses or injuries** the plaintiff has had to the present time or that the plaintiff will probably have in the future, including: physical and mental pain and suffering, fear, anxiety, humiliation, embarrassment, indignity, public disgrace, and any loss to plaintiff's reputation which were caused by the malicious prosecution;

- **economic losses or injuries** the plaintiff has had to the present time or that the plaintiff will probably have in the future, including: court costs, reasonable attorney fees and any other reasonable expenses which the plaintiff has had in defending himself in the criminal case against him, a reasonable amount for the time the plaintiff necessarily lost in preparing for and in attending the trial of the criminal case, loss of income, and damage to his business and employment.

87.     The facts of this case warrant an award of punitive damages.

## ATTORNEYS' FEES ARE REQUESTED

88.     Pursuant to Colo. Rev. Stat. § 13-21-131 (2020), Plaintiffs ask this Court to award attorneys fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants, and award him relief as allowed by law and equity, including, but not limited to:

1.     Declaratory relief and injunctive relief, as appropriate;

2.     Actual economic damages as established at trial;

12

3. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

4. Punitive or exemplary damages for all claims as allowed by law in an amount to be determined at trial;

5. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

      i.      Issuance of a formal written apology from each Defendant to Plaintiff;

      ii.      The imposition of appropriate policy changes designed to avoid future similar misconduct by Defendants;

      iii.      Mandatory training designed to avoid future similar misconduct by Defendants;

      iv.      Imposition of disciplinary action against appropriate employees of Denver;

6. Pre-judgment and post-judgment interest at the highest lawful rate;

7. Attorney's fees and costs; and

8. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 3rd day of December 2021.

                 _s/ David A. Lane_
                 David A. Lane, Atty Reg. No. 16422
                 KILLMER, LANE & NEWMAN, LLP
                 1543 Champa Street, Suite 400
                 Denver, Colorado 80202
                 (303) 571-1000
                 (303) 571-1001 facsimile
                 dlane@kln-law.com

                 Jane Fisher-Byrialsen, # 49133
                 Fisher & Byrialsen, PLLC

4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
Phone: (303) 256-6345
Email: Jane@FBLaw.org

Hollis A. Whitson, #32911
Samler and Whitson, PC
1600 Stout Street, Suite 1400
Denver, CO 80202
Phone: 303-670-0575
Email: Hollis@SamlerandWhitson.com

ATTORNEYS FOR PLAINTIFF