**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-01960-CNS-KLM

MICAH KIMBALL,

  Plaintiff,

v.

OFFICER JAMI SISNEROS, in their individual and official capacity;
OFFICER RANDAL DENISON, in their individual and official capacity;
OFFICER SEAN KELLY, in their individual and official capacity;
OFFICER SCOTT HAGAN, in their individual and official capacity;
OFFICER JOHN MEONI, in their individual and official capacity;
CHIEF PAUL PAZEN, in his official capacity;
CITY AND COUNTY OF DENVER, COLORADO,

  Defendants.

---

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS [Doc. 21]**

---

  Plaintiff, through his attorneys David A. Lane and Liana Orshan of Killmer, Lane & Newman, LLP, Jane Fisher-Byrialsen of Fisher & Byrialsen, PLLC, and Hollis Whitson of Samler & Whitson, PC, hereby submits the following Response to Defendants' Motion to Dismiss, [Doc. 21], and states in support the following:

## I. BACKGROUND

  On or about October, 1, 2019, Michelle Jacobson, the then-significant other of the Plaintiff, Micah Kimball, tragically killed herself in the home the couple shared in Denver. The police, including some of the Defendants, were called to the scene by Mr. Kimball and a neighbor. Despite mounds of evidence to the contrary, Mr. Kimball was charged with first-degree murder and unlawful imprisonment, held without bail for approximately 72 days, and tried on the charges.

During the course of Mr. Kimball's prosecution, Defendants, who are all Denver Police Department ("DPD") officers, knowingly or with reckless disregard withheld exculpatory evidence from the prosecutors, Plaintiff, the court, defense attorneys, and other relevant parties. Defendants also mislead the prosecutors on numerous occasions, by telling them such things as forensic tests were not yet performed and results not available, when in fact the results were available and highly exculpatory. These purposeful omissions and deceptive actions resulted in profound and severe damages, including incarceration for 72 days and the shame and distress of the entire community believing Mr. Kimball murdered his partner. Mr. Kimball was later acquitted of all charges at trial.

Defendants' conduct in withholding material information from the prosecutor, criminal court, and other parties violated Plaintiff's rights to be free from malicious prosecution under the federal and Colorado state constitutions, which includes the right to not have prosecution continued when probable cause has dissipated. [1]

## II. STANDARD OF REVIEW

To state a claim under Fed. R. Civ. P. 8(a), "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012) (citation omitted). Plausible does not mean likely to be true. *Robbins v. Okla ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Plaintiff agrees to voluntarily dismiss his unlawful seizure claims and his claims against the City and County of Denver and Defendant Pazen. Plaintiff has already voluntarily dismissed the claims against Defendant Fox asserted in his original complaint, as shown by the fact that the amended complaint does not name him as a Defendant or include any allegations showing his liability.

*Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Specific facts are not necessary to state a claim for relief; the plaintiff "need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Khalik*, 671 F.3d at 1191. Plaintiff is not required to set forth "a prima facie case for each element" of the claim to survive a motion to dismiss. *Sylvia v. Wisler,* 875 F.3d 1307, 1326 (10th Cir. 2017) (citation omitted).

In reviewing a motion to dismiss for failure to state a claim, the court must accept as true all the well-pleaded factual allegations in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citation omitted). The court then must determine whether, viewing the complaint "as a whole," *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009), and the allegations in the light most favorable to the plaintiff, the plaintiff has pleaded a plausible entitlement to relief. *Iqbal*, 556 U.S. at 679. "There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n*, 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). "[G]ranting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178 (citation omitted).

### III. ARGUMENT

Plaintiff has plausibly pleaded in both his federal and state constitutional claims that Defendants' conduct violated his right to be free from malicious prosecution because (1) issue preclusion does not apply to the criminal court's probable cause finding and there is no "rebuttable presumption" that probable cause existed; (2) Plaintiff's malicious prosecution claim under Colo. Rev. Stat. § 13-21-131 was filed within the statute of limitations; (3) Plaintiff plausibly pleaded a § 1983 malicious prosecution claim under the Fourth Amendment and

Defendants are not entitled to qualified immunity; and (4) all Defendants' conduct sufficiently contributed to Plaintiff's damages so as to establish their liability.

    **A.  <u>The criminal court's findings do not preclude civil liability.</u>**

        **1.  <u>Defendants do not meet their burden to show that the criminal court's findings are entitled to collateral estoppel.</u>**

"The preclusive effect of a state-court decision in a § 1983 action filed in federal court is a matter of state law." *Wilkinson v. Pitkin Cty. Bd. of Cty. Comm'rs*, 142 F.3d 1319, 1322 (10th Cir. 1998).[2] Under Colorado law, four elements must be met for issue preclusion (also known as collateral estoppel) to apply:

> 1) The issue sought to be precluded must be identical to an issue actually and necessarily decided at a prior proceeding; 2) there must have been a final judgment on the merits at the first proceeding; 3) there must be identity of parties or privity of parties against whom the doctrine is asserted; and 4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in a prior proceeding.

*Schenck v. Minolta Office Sys., Inc.*, 802 P.2d 1131, 1134 (Colo. App. 1990). The burden of establishing that the elements of collateral estoppel are met "rests with the party seeking preclusion." *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo. 1999). Defendants have failed to show that at least two, if not three, of these elements are met in this case.

    Colorado precedent is clear that for a party to have had "a full and fair opportunity to

---

[2] For this reason, some of the cases Defendants cite in support of their argument are inapplicable. For example, *Angel v. Torrance Cty. Sheriff's Dep't*, 183 F. App'x 707 (10th Cir. 2006), was an appeal from a New Mexico district court decision, and cites to *Hubbert v. City of Moore*, 923 F.2d 769 (10th Cir. 1991), which applied Oklahoma state law. *See Williams v. City of Tulsa*, No. 11-CV-469-TCK-FHM, 2014 U.S. Dist. LEXIS 157679 at *10 (N.D. Okla. Nov. 7, 2014) (explaining that *Hubbart*'s reasoning turned on Oklahoma law). Interestingly, five years after *Hubbert* was decided, the Tenth Circuit questioned whether even Oklahoma would still follow the same reasoning *Hubbert* applied. *See Bell v. Dillard Dep't Stores*, 85 F.3d 1451, 1458 (10th Cir. 1996).

litigate [an] issue," "the opportunity to appeal a state court's decision is required." *Diallo v. Milligan*, No. 18-cv-02898-REB-KLM, 2019 U.S. Dist. LEXIS 122458, at *16 (D. Colo. July 23, 2019). As the Tenth Circuit explained, a criminal defendant acquitted at his criminal trial "did not have a full and fair opportunity in the prior proceeding to litigate the issue of probable cause to arrest." *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991). "[He] did not have an opportunity to appeal the court's ruling" because "[b]efore a final judgment, such an interlocutory appeal would have been improper, and after the judgment [of acquittal], an appeal was rendered moot." *Id.* In *Dixon*, the Tenth Circuit affirmed the district court's denial of a summary judgment motion based on issue preclusion and qualified immunity, "in part because [the plaintiffs] did not have a full and fair opportunity to litigate the issue of probable cause in the prior proceeding" given that they were acquitted. *Martinez v. Hooker*, 601 F. App'x 644, 648 (10th Cir. 2015) (following and citing *Dixon*, 922 F.2d at 1459).

While *Dixon* addressed the lack of preclusive effect of an order denying the criminal defendant's motion to suppress, multiple decisions under Colorado law and other jurisdictions' law, when addressing probable cause to charge or continue prosecuting, apply the same reasoning. For example, in *Diallo*, 2019 U.S. Dist. LEXIS 122458, at *16-20, the court denied the defendant's motion to dismiss the plaintiff's malicious prosecution claim under *Dixon*, finding that the plaintiff "did not have a full and fair opportunity to litigate the issue[] of probable cause…because he was never afforded an opportunity to appeal the state court's interlocutory decision regarding [it]." The court explained that "[r]egardless of the extent to which the issue[] [was] actually litigated, [the plaintiff's] ultimate acquittal rendered any appeal regarding the disposition of [the] issue[] moot and thus necessarily prevent[ed] the [c]ourt from

attaching any preclusive effect to the state court's decision." *Id.* at *18.[3]

Likewise, under Colorado law, no final judgment on the merits exists for purposes of collateral estoppel unless there was "ample opportunity for review." *Carpenter v. Young*, 773 P.2d 561, 566-568 (Colo. 1989) (adopting the tests from *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961), and the Restatement (Second) of Judgments § 13 (1982), and labeling *Lummus* "[t]he most widely cited case" on this issue). "The announcement in *Carpenter* that there must be opportunity for review before a judgment can be accorded preclusive effect for purpose of issue preclusion effectively overruled [prior court of appeals cases holding otherwise]." *Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005). Thus, issue preclusion should apply only to a decision in a previous proceeding where "[t]he parties were fully heard,…the court supports its decision with a reasoned opinion,…[and] the decision was subject to appeal or was in fact reviewed on appeal." Restat. 2d of Judgments § 13 *cmt. g* (1983). Indeed, "[i]n a decision applying federal common law, the United States Supreme Court has likewise indicated its concern about giving preclusive effect to nonappealable rulings," explaining that the lack of an avenue to correct errors via post-trial motions and appellate review "strongly militates" against applying preclusion under contemporary principles of collateral estoppel. *Bell*, 85 F.3d at 1457 (citing *Standefer v. United States*, 447 U.S. 10, 23 (1980)).

---

[3] *See also, e.g.*, *Bell v. Dillard Dep't Stores*, 85 F.3d 1451, 1456-57 (10th Cir. 1996) (explaining that the Tenth Circuit has "concluded that a Colorado court's denial of a pretrial motion to suppress did not preclude litigation in a subsequent civil rights action of the issue of probable cause to arrest" when "the plaintiffs in the civil rights action had not had a full and fair opportunity to litigate the probable cause issue because their acquittal in the prior criminal case deprived them of the opportunity to appeal," and collecting cases from other jurisdictions following the same reasoning); *accord Bradley v. Reno*, 749 F.3d 553, 558-59 (6th Cir. 2014) (holding that "when an acquittal prevents a criminal defendant from appealing a ruling" on probable cause, "the ruling has no preclusive force" in a subsequent civil § 1983 action, and collecting cases); *Williams v. Weber*, 905 F. Supp. 1502, 1590-10 (D. Kan. 1995).

Defendants have also failed to meet their burden to show preclusion because, even apart from the fatal fact that Plaintiff could not appeal the probable cause determination in the state criminal case, Defendants have not established that Plaintiff had a full and fair opportunity to litigate the issue of probable cause. Because Defendants present this argument on a motion to dismiss, not a motion for summary judgment, no discovery has occurred, and this Court has not been presented with evidence regarding to what extent Plaintiff "had sufficient opportunity to present and review evidence and cross-examine evidence" in the criminal proceedings. *Wilkins v. De Reyes*, No. 02-980 JH/RLP, 2005 U.S. Dist. LEXIS 60297, at *11 (D.N.M. June 1, 2005). "It is well-settled that a federal court cannot assume what occurred in a state court proceeding." *Id* "Defendants…fail[ed] to provide evidentiary support for their proposition that Plaintiff[] had a full and fair opportunity to litigate," *id.*, nor could they have done so without converting their motion into one for summary judgment, which would then have required giving Plaintiff the opportunity to conduct discovery before this Court could decide summary judgment. Consequently, when deciding this issue on a motion to dismiss, relying on summary judgment decisions is unhelpful, because on a summary judgment motion, the court will "[have] significantly more information about what actually happened [in the criminal case]." *Herrera v. Garcia*, No. 1:16-cv-01366 LF-JHR, 2018 U.S. Dist. LEXIS 8403, at *14-15 (D.N.M. Jan. 18, 2018); *cf. Gouskos v. Griffith*, 122 F. App'x 965, 974 (10th Cir. 2005) (explaining that under Oklahoma law, "[f]ailure to submit the entire [record of the criminal case, including all preliminary hearing transcripts] is fatal to [an] issue-preclusion defense on summary judgment" in a false arrest civil case (citation omitted)).

Indeed, "[e]ven when an opportunity for full adversary proceedings is afforded, strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal

proceeding," and "considerations which counsel against engaging in [a full adversary hearing] at the early stages of a criminal proceeding are the type of strategic decisions which might negate any preclusive effect regarding the issue." *Diamond v. Howd*, 288 F.3d 932, 935-36 (6th Cir. 2002) (citation omitted). Nor is it clear to what extent criminal defense counsel had access to the full police file, including Defendants' notes and correspondence, before pretrial proceedings on probable cause, and defense counsel clearly did not have access to the district attorney's office's file. *Cf. id.* at 936 (stating that lack of access to discovery weighs against applying issue preclusion); *Toro v. Gainer*, 370 F. Supp. 2d 736, 741 (N.D. Ill. 2005) (concluding that different evidence supporting an acquittal or dismissal of criminal charges, if not presented at pretrial hearings on probable cause, precludes the application of collateral estoppel)

Moreover, even were this Court to be presented with additional material about the proceedings in the criminal case, such as who testified and what evidence was presented during the hearings, at a preliminary hearing, "all inferences must be drawn in favor of the prosecution and all evidence is to be viewed in a light most favorable to the prosecution." *Schenck*, 802 P.2d at 1134.[4] For this reason, the Tenth Circuit has explained that a criminal state court's probable cause decision is "no[t] [a] final ruling on the issue of whether [a civil malicious prosecution defendant] presented false testimony to obtain a probable cause finding," because the state court judge "[does] not decide the credibility issues between [the criminal defendant's] witnesses and [the prosecution's witnesses]"; rather, "the judge simply resolve[s] the probable-cause dispute in favor of the State as required by law." *Gouskos*, 122 F. App'x at 973; *see also id.* at 974

---

[4] *See also* Restat. 2d of Judgments § 28(4) (1982) (stating that issue preclusion does not apply under certain circumstances, including if "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden that he had in the first action").

(explaining that because the State dismissed the criminal charges in *Gouskos*, the plaintiff "never had an opportunity to obtain a full and fair adjudication on the credibility issues underlying the probable cause determination," and applying issue preclusion would deny him "his day in court"); *accord Bailey v. Andrews*, 811 F.2d 366, 369-70 (7th Cir. 1987) (explaining that the lack of opportunity to challenge the arresting officer's credibility at preliminary or probable cause hearing, and the criminal court's failure to evaluate credibility at that type of hearing, means that the element of a "full and fair opportunity to litigate the issue of probable cause" is not met). For these reasons, the allegations in the amended complaint, including the documents attached to the motion to dismiss, do not establish that Plaintiff had a full and fair opportunity to litigate the issue of probable cause.

Further, Colorado cases hold that the first collateral estoppel element (whether the issue is identical to one actually decided in the first proceeding) likely is not met when a civil malicious prosecution defendant attempts to preclude a former criminal defendant, now civil plaintiff, from relitigating a probable cause determination: "the issue of probable cause in a [a] malicious prosecution proceeding is not identical to the probable cause issue in [a] preliminary hearing." *Schenck*, 802 P.2d at 1134. "The sole focus at the preliminary hearing was whether ***the state*** had probable cause to believe the plaintiff committed a crime." *Id.* at 1134-35 (emphasis added). "However, in the malicious prosecution proceeding, the issue was whether ***the defendants*** had probable cause to believe plaintiff committed the crime." *Id.* at 1135 (emphasis added). "Since the issues involved in the two proceedings [are] not identical, collateral estoppel does not apply." *Id.*; *see also, e.g.*, *Haskett v. Flanders*, No. 13-cv-03392-RBJ-KLM, 2014 U.S. Dist. LEXIS 179691, at *27-28 n.8 (D. Colo. Dec. 12, 2014) (relying on *Schenck* to reach the same conclusion and thus refusing to dismiss a state law malicious prosecution tort claim);

*Anderson v. Maddocks*, No. 06-cv-01079-WDM-PAC, 2007 U.S. Dist. LEXIS 20970, at *3-4 (D. Colo. Mar. 23, 2007) (same). Here, especially, the criminal court's judge's one-sentence statement in his order on the July 6, 2020, motion for sanctions that he still would have found probable cause if presented with the evidence discussed in the motion at the December 2019 preliminary hearing does not provide any basis for this Court to conclude that the criminal judge actually decided an issue identical to the one presented in this civil case. *See* [Doc. 21-1] ("Having reviewed this evidence and reviewing my notes from the PH/PEPG hearing, I do not find that the evidence is of such significance that I would not have bound over the case on the charge of Murder in the First Degree.").

Accordingly, for multiple alternate reasons, each of which would be sufficient on its own, this Court must reject Defendant's argument that issue preclusion prevents Plaintiff from stating a claim for relief.

### 2. This Court should not apply a "presumption of probable cause" in deciding Defendants' motion to dismiss.

For two main reasons, this Court must reject Defendants argument that any sort of presumption of probable cause applies here. First, "[i]n a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 302. Defendants have not cited any authority that some sort of presumption in favor of probable cause applies to Plaintiff's federal § 1983 claim, and at least one federal court of appeals has held that it does not: "[t]he common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000); *cf Montgomery v. De Simone*, 159 F.3d 120, 125-26 (3d Cir. 1998).

Second, as to both Plaintiffs' § 1983 and state law claims, applying a rebuttable

presumption of probable cause from a criminal proceeding at which all inferences were drawn in favor of the prosecution and all evidence viewed in the light most favorable to the prosecution would conflict with the standard that must be applied in deciding a motion to dismiss, as discussed above. *See supra* § III.A.1 at pp. 8-9. *Schenck*, 802 P.2d at 1133, cited by Defendants, is distinguishable because it addressed a motion for a new trial by the defendant after a jury trial. Likewise, *Wigger v. McKee*, 809 P.2d 999, 1004-07 (Colo. App. 1990), also cited by Defendants, was a decision on a motion for summary judgment. As such, in both cases, the court could consider whether a presumption of probable cause had been "***established by the presentation of certain underlying facts*** [so as] to create a prima facie case upon which judgment [could] be rendered in the absence of contrary evidence." *Schenck*, 802 P.2d at 1133 (emphasis added). No evidence has been presented in this case, and no facts established; rather, this Court must assume all allegations pleaded by Plaintiff are true, but the same is not true for facts of which this Court may take judicial notice. Rather, "[o]n a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (citation omitted). "Therefore, while the Court can take judicial notice of the attachments to [Defendants'] motion to dismiss as they are [court] records, it cannot take the facts asserted in the filings to be true." *Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1251 (D. Colo. 2015). This Court thus may not take as true that probable cause existed to charge and continue prosecuting Plaintiff in his criminal case, despite the fact that the criminal court judge decided it did.

Thus, a rebuttable presumption of probable cause may only be applied—and only as to a state claim—if it has been established by the presentation of evidence, and it must not be applied

if "direct and credible evidence supports a contrary conclusion." *Schenck*, 802 P.2d at 1133; *see also id.* (stating that the record in *Schenck* reflect[ed] that [the] plaintiff presented ample evidence contrary to the rebuttable presumption" and so it "'disappeared' upon the presentation of such strong [and] credible evidence supporting the conclusion of no probable cause"). Since no evidence has been presented, and this Court cannot accept the finding of the criminal court as true based on judicial notice, Defendants have not shown that any rebuttable presumption should apply here; indeed, since Plaintiff's allegations must be taken as true, Plaintiff is more entitled to an inference that any such presumption should not be applied than Defendants are that one should. As the court concluded in *Diallo* once it rejected the application of issue preclusion to the criminal court's probable cause finding, because no issue preclusion applies, this Court must "accept as true Plaintiff's allegations that Defendants[]…lacked probable cause." 2019 U.S. Dist. LEXIS 122458, at *19.

For the same reason, this Court must reject Defendants' argument based on *McKee* that Plaintiff must show that Defendants' misconduct tainted the criminal court judge's probable cause determination at either the preliminary hearing in December 2019 or in response to the July 2020 motion for sanctions. Without knowing what evidence was presented at the preliminary hearing or on what basis the judge made his decision in July 2020, this Court does not have sufficient information to make such a determination, contrary to the analysis a court would conduct when considering a magistrate's decision to issue an arrest warrant based on an officer's probable cause affidavit. Under that analysis, a court considers whether an officer knowingly or with reckless disregard for the truth includes in an arrest affidavit false statements or "omit[s] information…which, if included, would have vitiated probable cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). "In a case involving information omitted from an

affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Id.* (citation omitted). Unlike with a probable cause affidavit that contains the full extent of the necessary information for this analysis, because this Court does not have in front of it the transcripts from the preliminary hearing nor all other information showing on what basis the criminal court judge found probable cause in December 2019 and in July 2020, it cannot engage in a similar analysis. Rather, this Court must apply the same analysis it would in response to any other Rule 12(b)(6) motion and consider only the allegations within the four corners of the amended complaint and the facts of which it can take judicial notice, then determine whether Plaintiff has plausibly alleged that there was no probable cause for Plaintiff's charges and continued prosecution.

To the extent that this Court worries that the criminal court judge's decision is entitled to a "presumption of validity," the key to upholding that presumption is deciding to what extent there was a "*truthful* showing of probable cause" during the pretrial criminal proceedings. *Lewis v. City of Chi.*, 914 F.3d 472, 477 (7th Cir. 2019) (citation omitted). Because, for the reasons explained above, Plaintiff did not have a full and fair opportunity to litigate the issue of probable cause during those proceedings, and especially because the criminal court judge decided all credibility and other areas of dispute in favor of the prosecution during the pretrial proceedings, this Court cannot determine on a motion to dismiss whether or not a truthful showing of probable cause occurred.

Another court addressed similar concerns in deciding that even though two post-conviction courts denied relief even after considering new DNA testing, the court did not have to defer to their findings on the criminal defendant/civil plaintiff's malicious prosecution claim. *See*

*Bryson v. Macy*, 611 F. Supp. 2d 1234, 1257-58 (W.D. Okla. 2009). In finding that the DNA evidence presented by the plaintiff vitiated probable cause, the court concluded that the post-conviction courts reached their decisions on a basis that was not supported by the record, and "therefore [did] not find that the denial of post-conviction relief by [those courts] ]was]. Sufficient to establish as a matter of law existence of probable cause." *Id*. (rejecting arguments that the judicial determination of a probable cause at the preliminary hearing and the [post-conviction courts'] opinions require a finding that probable cause existed"). The same analysis applies here, except because this Court does not have the full record of the criminal court proceedings, including lacking the pretrial hearing transcripts, much less an explanation for why the criminal court judge reached its one-sentence conclusion that it still would have found probable cause if presented with the facts from the sanctions motion at the preliminary hearing, this Court cannot yet engage in such an evaluation.

Ultimately, "[b]ecause a rebuttable presumption does not shift the burden of proof, the opponent is not required to persuade the jury of [his] position regarding the presumed facts in order to rebut it. Rather, [he] is only required to offer evidence legally sufficient to  meet the burden of going forward." *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009). Because Plaintiffs' allegations, taken as true for purposes of deciding the motion to dismiss, show that probable cause was lacking when Plaintiff was charged and throughout the rest of his prosecution including at the point the motion for sanctions was filed, Plaintiff has met his Rule 8 burden to move forward. Once Plaintiff presents evidence, for example in response to a motion for summary judgment or a motion for directed verdict or a post-trial motion, then this Court can decide whether a rebuttable presumption of probable cause should apply, and if so, whether Plaintiff's evidence is sufficient to rebut it. To apply the presumption now would be to defeat the

basic purpose of presumptions of "simplifying the determination of certain legal issues" and instead "generates satellite litigation over the meaning and application of the presumption, instead of aiding the parties and the court in deciding the substantive issue before the court." *Rome v. HEI Res., Inc.*, 2014 COA 160, ¶ 39, 411 P.3d 851, 859-60.

**B.   Colo. Rev. Stat. § 13-21-131 applies to Plaintiff's malicious prosecution claims, which were filed within the statute of limitations.**

Plaintiff concedes that Colo. Rev. Stat. § 13-21-131 ("section 13-21-131") is not retroactive, but Plaintiff's state constitutional malicious prosecution claim did not accrue until Plaintiff was acquitted in August 2020, after the effective date of section 13-21-131, which was June 19, 2020. Plaintiff filed this action December 3, 2021, and it therefore falls within the two-year statute of limitations for section 13-21-131 claims. *See* Colo. Rev. Stat. § 13-21-131(5) (prescribing a two-year statute of limitation).

Generally, under Colorado law, "a cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(1). Both 42 U.S.C. § 1983 and Colorado tort common law hold that a claim for malicious prosecution does not accrue until criminal proceedings terminate in favor of the plaintiff (the criminal defendant). *See, e.g.*, *Allen v. City of Aurora*, 892 P.2d 333, 335 (Colo. App. 1994); *Schenck*, 802 P.2d at 1135; *Dodge v. Montrose Potato Growers Coop. Ass'n*, 34 Colo. App. 223, 225, 524 P.2d 1394, 1395 (1974).

Defendants provide no argument why the same rule should not apply to a constitutional malicious prosecution claim under section 13-21-131, other than by citing to cases based on the notice requirement of the Colorado Governmental Immunity Act ("CGIA"). However, the rule under the CGIA for when to determine the deadline by when notice of claim must be submitted

is different than the general rule for when a claim of action accrues. Under the CGIA, a plaintiff has 180 days from the date of injury to provide notice of claim to Defendants. Colo. Rev. Stat. § 24-10-109. Contrary to a claim of action's date of accrual, "[f]or purposes of the [C]GIA, it is immaterial whether the elements of a plaintiff's claims have ripened." *Masters v. Castrodale*, 121 P.3d 362, 364 (Colo. App. 2005). "While, under tort law, the concept of accrual encompasses **both** the discovery of **the injury** and the discovery of **the cause** of that injury, the [CGIA] notice period is triggered when a claimant has only discovered that he or she has been wrongfully injured." *Id.* (emphasis added). "Thus, although the successful termination of criminal proceedings generally is a condition precedent to recovery in a malicious prosecution action…claims for malicious prosecution accrue *for purposes of filing a notice under the [C]GIA* when claimants are aware that allegedly improper charges have been filed against them." *Id.* at 364-65 (emphasis added) (citation omitted). Since the CGIA explicitly does not apply to constitutional claims under section 13-21-131, *see* Colo. Rev. Stat. § 13-21-131(2)(a), the cases cited by Defendants are inapplicable.[5] Accordingly, Plaintiff's claim did not accrue until he was aware or should have been aware both of the injury—the charges against him—and its cause— that the charges were unlawful, of which he became aware or should have been aware when he was acquitted.[6]

---

[5] *See also Allen v. City of Aurora*, 892 P.2d 333, 335 (cited by Defendants for stating in dictum that Colorado's rule is "that malicious prosecution claims accrue at the time of the allegedly wrongful arrest," and citing to *Carroll v. RTD.*, 638 P.2d 816 (Colo. App. 1981), for this proposition); *but see Carroll*, 638 P.2d at 818 (addressing when the **CGIA** 180-day notice period commended for malicious prosecution claims).

[6] Defendants cite absolutely no support or authority for their argument in footnote 8 on page 25 of their motion to dismiss, [Doc. 21], that applying this rule would alter the rights and liabilities of Defendants at the time of the challenged conduct because prior to section 13-21-131, Plaintiff would have had to give CGIA notice for a state claim, and thus allowing Plaintiff to assert a malicious prosecution claim under section 13-21-131 would impose new and additional liability

**C.  Plaintiff stated a plausible claim for relief under the Fourth Amendment.**[7]

    **1.  Defendants violated Plaintiff's Fourth Amendment rights.**

To state a Fourth Amendment malicious prosecution claim, the plaintiff must demonstrate that: (1) the defendant was instrumental in the plaintiff's prosecution or continued confinement; (2) the original action terminated in favor of the plaintiff; (3) probable cause did not exist to support the claim; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Pierce v. Gilchrist*, 359 F.3d 1279, 1291-97 (10th Cir. 2004). Defendants' argument that Plaintiff has not plausibly pleaded the third and fourth elements must be rejected.

    **a.  The amended complaint plausibly alleges that probable cause did not exist for Plaintiff's continued prosecution.**

"The law…is unambiguous: a government official must have probable cause to arrest an individual." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed…an offense." *Jones v. City & Cty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988). "[T]he relevant question is whether *a substantial probability* existed that the suspect committed the crime," which "requir[es] something more than a bare suspicion." *Stonecipher v.*

---

that did not exist at the time of the misconduct and would deprive them of rights they possessed at the time. But Plaintiff's claim accrued after the effect date of section 13-21-131, and Plaintiff filed his action within the statute of limitations based on that accrual date. Defendants do not show that legislature's decision to not apply the CGIA to section 13-21-131 claims should prejudice Plaintiff, when the obvious intent of the legislature's decision was to benefit aggrieved parties bringing claims based on violations of state law.

[7] Defendants do not seek to dismiss Plaintiff's malicious prosecution state constitutional claim based on their substantive argument regarding Plaintiff's federal claim. Defendants do not argue that Plaintiff's malicious prosecution state constitutional claim must be dismissed for failing to state a claim, nor would they be able to succeed in so arguing, given that qualified immunity does not apply to section 13-21-131 claims. *See* Colo. Rev. Stat. § 13-21-131(2)(b).

*Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (emphasis added) (citation omitted). "Mere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause. *McKenzie v. Lamb*, 738 F.2d 1008, 1008 (9th Cir. 1984). The determination of "[p]robable cause is based on the totality of the circumstances." *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009). "[W]here there is a question of fact or room for a difference of opinion about the existence of probable cause, it is a proper question for a jury." *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007) (citation omitted). Unlike an unlawful arrest claim, to defeat a malicious prosecution claim, probable cause must have existed for ***each*** of the charged crimes. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996).

For the unlawful arrest claim, the time of arrest is pivotal. However, for Plaintiff's malicious prosecution claim, the relevant time is when charges were brought and throughout the prosecution. *See Carbajal v. Lucio*, 832 F. App'x 557, 563 (10th Cir. 2020) (explaining that an element of malicious prosecution is that "the arrest, continued confinement, ***or*** prosecution was unsupported by probable cause" (emphasis added)). Plaintiff sufficiently alleges that any probable cause dissipated when Defendants received the results from testing of forensic evidence and they then knew or should have known that no homicide occurred, but rather that Ms. Jacobsen died from a self-inflicted gunshot wound. Notably, Defendants focus on probable cause to arrest at the scene but make no argument contesting Plaintiff's allegations regarding continuation and prolongation of the prosecution.

In *Pierce,* 359 F.3d at 1281–82, 1284, 1296, the Tenth Circuit upheld the district court's refusal to dismiss on qualified immunity grounds based on the use of false evidence to "induce prosecutors to initiate an unwarranted prosecution," and observing that the court saw no "reason to distinguish between falsifying evidence to facilitate a wrongful arrest and engaging in the

same conduct several days later to induce prosecutors to initiate an unwarranted prosecution." Plaintiff has plausibly pleaded that the Defendants continued or allowed the prosecution to continue without probable cause at the very latest less than a month after Plaintiff's arrest. *See* July 15, 2022, Amended Complaint, [Doc. 1-19], ¶ 21.

Police officers may not close their eyes to exculpatory evidence that develops after arrest but prior to or during the continued prosecution. Plaintiff has sufficiently alleged that minimal further investigation would have shown that the defendants had no probable cause to continue Plaintiff's prosecution and confinement. Probable cause does not exist when a "minimal further investigation" would have exonerated the suspect. *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *Baptise v. J.C. Penney, Co., Inc.*, 147 F.3d 1252, 1257 (10th Cir. 1998) (quoting *Be Vier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)). "[P]olice officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." *Baptise v. J.C. Penney, Co.,* 147 F.3d 1252, 1259 (10th Cir. 1998)  Because "minimal further investigation would have exonerated [Plaintiff]," *Kuehl*, 173 F.3d at 650, Defendants did not have probable cause for the continued prosecution and confinement of Plaintiff.

Defendants base their probable cause argument on the fact that Ms. Jacobsen was deceased by a gunshot wound to her head and the alleged statement of the neighbor "that Plaintiff was falsely imprisoning" Ms. Jacobsen. *See* [Doc. 21] at 16-17. But "when police officers obtain information from an eyewitness or victim establishing the elements of a crime" the information is not sufficient to provide probable cause if there exists "evidence that the information, or the person providing it, is not credible." *Barnes v. Timmons*, 565 Fed. Appx. 736,

738 (10th Cir. 2014) (citation omitted). Plaintiff alleges that the neighbor could not see Plaintiff lock Ms. Jacobsen in a shed, as she had asserted in her 911 call, which a minimal investigation examining the angle of her view vis-a-vis the shed would have revealed. *See* Amended Complaint, [Doc. 1-19], ¶ 39. Other evidence also contradicted her statement: the lack of any signs of foul play in or around the garage, for one. *Id.* Along with the forensic evidence showing that Plaintiff did not shoot Ms. Jacobsen, Defendants knew or should have known once that evidence was provided by the forensic lab that there was no probable cause. *See id.* at ¶¶ 20-46, 71-93, 96-110; *see also infra* § III.C.1.c at pp. 22-23. Importantly, it was not sufficient for Defendants to have probable cause only to continue Plaintiff's prosecution for false imprisonment, they also needed probable cause to support the first-degree murder charge. Once the forensic evidence came back and the neighbor's statement was proved or should have been proved incredible, probable cause had completely dissipated for at least the murder charge, if not both charges, and Defendants had reason to know that this was the case.

Defendants cite *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995), and *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009), in support of their argument, but neither *Romero* nor *Husbands* concerned a motion to dismiss. Both addressed appeals from denials of motions for summary judgment. This matters because–particularly in *Romero*–the issue was what **evidence** the plaintiff had produced at the summary judgment stage, a burden Plaintiff does not have at the motion to dismiss stage.

In *Romero*, 45 F.3d at 1477, the Tenth Circuit found that the plaintiff fatally failed to supply any information regarding the two witnesses that the police had interviewed and upon which they based probable cause. At the summary judgment stage, the plaintiff did not reveal

what the two witnesses told or did not tell police or reasons to doubt their credibility. Consequently, the plaintiff failed to make the necessary factual showing. *Id.*

In *Husbands*, police were already at the scene (arresting someone else in an unrelated incident) when shots were suddenly fired from the direction of a certain address. 335 F. App'x at 127. The defendant officer saw the plaintiff when he looked in the direction from which the shots had been fired. *Id.* The plaintiff was standing alone and when he saw that the officer was looking at him, "[he] promptly turned around," immediately leaving and heading to the address from where it appeared the shots had been fired. *Id.* The Defendant's identification of Forde as the shooter was "practically instantaneous." *Id*. Thus, *Husbands* is distinguishable because probable cause was based upon the defendant officer's being an eyewitness to the plaintiff's alleged shooting, which is not the case here.

### b. <u>The amended complaint plausibly alleges that Defendants acted with malice.</u>

Defendants ignore the well-established principle that malice may be inferred from the lack of probable cause, and does not require Plaintiff to show actual ill-intent. *See Cronick v. City of Colo. Springs*, No. 20-cv-00457-CMA-KMT, 2022 U.S. Dist. LEXIS 7007, at *18 (D. Colo. Jan. 13, 2022). The allegations in the amended complaint plausibly meet this standard. Plaintiff has alleged that Defendants became aware of highly exculpatory evidence that they knew or recklessly disregarded vitiated probable cause but failed to put it in their reports and failed to notify the prosecution and other relevant parties of this evidence. *See* Amended Complaint, [Doc. 1-19], ¶¶ 24-29, 33-34, 43-44; *see also infra* § III.C.1.c at pp. 22-23. Further, Defendant Meoni knowingly or recklessly misled the court when he testified at the preliminary hearing. *See* Amended Complaint, [Doc. 1-19], ¶ 45. Because states of mind must be proved circumstantially, this Court must at this stage of the case draw the inference that Defendants

acted knowingly or with reckless disregard from allegations that they had obvious reasons to doubt the guilt of Plaintiff. *See United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (citation omitted).

      **c.**   **The amended complaint plausibly alleges that Defendants caused Plaintiff's damages.**

Contrary to Defendants' argument that the amended complaint contains no allegations that any Defendant concealed or falsified evidence, *see* [Doc. 21] at 22, Plaintiff amply alleges that Defendants' knowing or reckless omission of exculpatory evidence from the district attorney's office, defense counsel, the Court, and/or other relevant parties caused Plaintiff's continued prosecution and confinement, as alleged by the following paragraphs from the amended complaint, for example:

- Defendants Meoni and Sisneros withheld exculpatory information from the prosecutor regarding the toxicology results and opinions, Amended Complaint, [Doc. 1-19], ¶¶ 33, 34;

- Even though all Defendants were aware of the Denver Crime Lab CSI results, they did not share them with Dr. Dawn Holmes but instead let her finalize her report without alerting her to this highly exculpatory information, *id.* at ¶¶ 24-27;

- Even though Defendant Meoni was well aware of the exculpatory Denver Crime Lab results and was aware that Dr. Holmes did not have this critical information when she completed her autopsy result, Defendant Meoni did not disclose all these facts in his discussion with the Deputy District Attorney; rather, he simply stated there was "no concrete evidence" of a homicide, *id.* at ¶¶ 24-25, 29;

- Defendant Meoni was aware of additional exculpatory evidence that came following his October 18, 2019, discussion with the Deputy District Attorney (such as the Denver

Crime Lab's Gunshot Residue reports issued October 22-24, 2019), but did not disclose this information, *id.* at ¶¶ 30-32, 44-45;

- Defendant Kelly included false statements in his report, i.e., an inculpatory statement attributed to Plaintiff that Defendant Kelly knew Plaintiff had not made, *id.* at ¶ 41;

- When the Deputy District Attorney asked Defendants Meoni and Sisneros for the toxicology results, they misled the District Attorney by stating that it "takes about 6-8 weeks for toxicology results to come back," when in fact the results had come in and were highly exculpatory, and Defendants Meoni and Sisneros knew that the defense was seeking these highly exculpatory results but purposely withheld them from the prosecutor, *id.* at ¶ 34; and

- Defendant Denison misled the Deputy District Attorney and withheld exculpatory information by stating he had no information beyond that reported by Defendant Sisneros and the CSI, even though Defendant Denison knew that he (with Defendant Hagan) had prevented CSI from collecting key exculpatory evidence at the scene, *id.* at ¶¶ 36, 38.

Defendants' causation argument is incorrect as a matter of law because there can be multiple causes for an injury. "Courts employ general tort principles of causation in § 1983 cases to determine whether a defendant's constitutional violation caused a plaintiff's damages." *See Furber v. Taylor*, 685 F. App'x 674, 678 (10th Cir. 2017). "[I]ntervening causes that are reasonably foreseeable do not ordinarily relieve a defendant of liability." *Heinrich v. Master Craft Eng'g, Inc.*, 131 F. Supp. 3d 1137, 1147-48 (D. Colo. 2015). An intervening cause supersedes the defendant's conduct as the proximate cause of an individual's injuries "only if it was not within the original foreseeable risk that [the defendant] created." *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990). Proximate causation, including whether an intervening cause

was foreseeable, is a fact question. *Id.*; *Thompson v. State Farm Mut. Auto. Ins. Co.*, 789 F.

App'x 90, 92 (10th Cir. 2019). "If reasonable persons could differ on the question of causation,

then summary judgment"--much less dismissal on a 12(b)(6) motion–"is inappropriate and the

question should be left to a jury." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1080

(9th Cir. 2013). Because the prosecution's reliance on police officer's statements in its charging

and continuing-to-prosecute decisions is foreseeable, a prosecutor's foreseeable decisions based

on such statements are not the type of intervening cause that defeats liability. *See Pierce*, 356

F.3d 1292 ("As the Restatement indicates, '[a] private person who takes an active part in

***continuing or procuring the continuation*** of criminal proceedings ***initiated by himself or by***

***another*** is subject to the same liability for malicious prosecution as if he had then initiated the

proceedings.'" (emphasis added) (quoting Restatement (Second) Torts § 655)).

   For example, in *Pierce,* the Tenth Circuit held that a malicious-prosecution theory would

lie against a forensic analyst even though she did not (and could not) decide to prosecute:

> [The forensic analyst] cannot "hide behind" the fact that she neither initiated nor
> filed the charges against [the plaintiff]. The actions of a police forensic analyst who
> prevaricates and distorts evidence to convince the prosecuting authorities to press
> charges is no less reprehensible than an officer who, through false statements,
> prevails upon a magistrate to issue a warrant. In each case the government official
> maliciously abuses a position of trust to induce the criminal justice system to
> confine and then to prosecute an innocent defendant.

*Pierce,* 359 F.3d at 1293; *see also Stonecipher v. Valles,* 759 F.3d 1134, 1147 (10th Cir. 2014)

("Of course, the fact that a government lawyer makes the final decision to prosecute does not

automatically immunize an officer from liability for malicious prosecution."); *Robinson v.*

*Maruffi*, 895 F.2d 649, 656 (10th Cir. 1990) ("If police officers have been instrumental in the

plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the

decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. ***They cannot***

*hide behind the officials whom they have defrauded.*" (emphasis added) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988)). Like the forensic analyst in *Pierce,* Defendants in this case are liable under a malicious prosecution theory because they knowingly or recklessly used false information or omitted material information to institute and continue legal process against Plaintiff. *See also Sanchez v. Hartley*, 810 F.3d 750, 758 (10th Cir. 2016) ("Like the forensic analyst in *Pierce,* the four detectives and investigator would incur liability under a malicious-prosecution theory if they knowingly or recklessly used false information to institute legal process.").

Thus, this Court should reject Defendants' arguments about causation at this stage of the proceedings. "Such questions of proximate causation are best left to the jury outside of extreme cases lacking any quantum of causation evidence." *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 985 (N.D. Ill. 2017). The causation element can be met, and is met here, if the officer supplied misleading information that was "instrumental in the plaintiff's ... prosecution." *Pierce*, at 1289 (citation omitted).

### 2.   <u>Defendants are not entitled to qualified immunity.</u>

Defendant Officers are not entitled to qualified immunity because Plaintiff's right not to be subjected to Fourth Amendment violations in the manner he was here was "sufficiently clear that every reasonable official would have understood that what he [or she] [was] doing violate[d] that right." *Mullenix*, 136 S.Ct. 305, 308 (2015) (citation omitted). The Supreme Court has made clear that a finding of clearly established law does "not require a case directly on point, [as long as] existing precedent…[has] placed the…constitutional question beyond debate." *Id.* Both the Supreme Court and the Tenth Circuit have long held that "general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela v. Hughes*, 138 S. Ct.

1148, 1153 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). "It is not necessary…for plaintiffs to find a case with exact corresponding factual circumstances; defendants are required to make reasonable applications of the prevailing law to their own circumstances." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999) (citation omitted). Fundamentally, and contrary to Defendants' argument,  courts "cannot find qualified immunity wherever [they have] a new fact pattern." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Instead, "[e]ven when no precedent involves facts materially similar to [the case at issue], the right can be clearly established if a precedent applies with obvious clarity." *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) (citation omitted). Even without precedential or persuasive authorities, a right can be clearly established when it is obvious. *See Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (per curiam). "After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) (Gorsuch, J.). "Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." *Sims v. Labowitz*, 885 F.3d 254, 264 (4th Cir. 2018). Defendants' conduct was obviously unlawful and "plainly [does] not qualify as the type of bad guesses in gray areas that qualified immunity is designed to protect." *Id.* (citation omitted).

Citing *City of Tahlequah v. Bond*, 142 S.Ct. 9, 11 (2021), Defendants demand a higher level of specificity in Defendants' constructive knowledge that their conduct was unlawful than is required. In *Bond*, the Court engaged in a fact-specific inquiry, following a district court's resolution of the case at summary judgment, to determine that no case clearly established that the

defendant's actions were unlawful. In that case, police officers shot a man who was not

complying with their commands to stop, and who raised a hammer behind his back and took a

stance as if he was about to throw the tool or charge at the officers. *Id.* at 10–11. The Court

distinguished the cases the Tenth Circuit had relied upon—two of which involved a suicidal

suspect and aggressive officers, and the other was dismissed for lack of jurisdiction—and found

them "dramatically different" from the facts of *Bond*. *Id.* at 12.[8]

However, although "the Supreme Court has instructed courts "not to define clearly

established law at too high a level of generality," and "the clearly established law must be

'particularized' to the facts of the case," this "standard doesn't require a case directly on point

for a right to be clearly established." *Washington v. City of Wichita*, No. 21-1189-DDC-KGG,

2022 U.S. Dist. LEXIS 151444, at *40, 2022 WL 3594587, at *12 (D. Kan. Aug. 23, 2022)

(citation omitted). The court's "analysis is not a scavenger hunt for prior cases with precisely the

same facts, and a prior case need not be exactly parallel to the conduct here for the officials to

have been on notice of clearly established law." *Id.* (quoting *Reavis v. Frost*, 967 F.3d 978, 992

(10th Cir. 2020). Because Plaintiff cites cases that would have put Defendants on notice that

_____

[8] Moreover, this is not an excessive force case. Throughout the development of the clearly
established standard, the Supreme Court has made clear that factual specificity in previous case
law is "especially important" in excessive force cases. *Mullenix*, 136 S. Ct. 305, 308 (2015)
(citation omitted). The Court has stressed that "[u]se of excessive force is an area of the law 'in
which the result depends very much on the facts of each case," in part because "officers are often
forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly
evolving—about the amount of force necessary in a particular situation." *Kisela*, 138 S. Ct. at
1153. Not only is Plaintiff's case not an excessive force case, but there is no indication in the
complaint that the situation was "tense, uncertain, and rapidly evolving," such that Defendants
did not have a clear and obvious opportunity in the twenty-one days between the sting operation
and the application for the warrant to consider whether their conduct would violate Plaintiff's
constitutional rights. *Cf. Gerhart v. McLendon*, 714 F. App'x 327, 335-36 (5th Cir. 2017)
(holding that the defendant-officer's "conduct [did] not fall on the hazy borders of the law"
because, in part, it was not a case where "the danger was unexpected," and the defendant had
"had the opportunity to prepare" for the circumstances he was confronting).

their conduct was unlawful, rather than cases with "dramatically different" facts, Defendants are not entitled to qualified immunity.

For instance, in *Pierce* (a 2004 case), the Tenth Circuit unequivocally held: "No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest." 359 F.3d at 1298 (citing *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990); *Franks v. Delaware*, 438 U.S. 154 (1978)); *see also Bruning v. Pixler*, 949 F2d 352, 357 (10th Cir. 1991). The *Pierce* court further explained:

> Qualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms. [The defendant's] alleged misconduct did not stem from a miscalculation of her constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry. Rather, as alleged, [the defendant] engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man. Such conduct, if it can be proven at trial, violated [the plaintiff's] constitutional rights with obvious clarity.

*Id*. at 1299-1300 (citation omitted). In *Pierce,* the Tenth Circuit observed that it had previously found malicious prosecution liability for "officers who conceal and misrepresent material facts to the district attorney." Id. at 1292 (citing *Robinson v. Maruffi*, 895 F.2d 649, 655–56 (10th Cir.1990)). The Court observed that *Robinson*, in turn, relied on the Seventh Circuit's decision in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir.1988), discussed below.

Likewise, by time of Plaintiff's arrest, "it was established law [in the Tenth Circuit] that 'the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene [and] investigate basic evidence'" before seeking to arrest a suspect. *Cortez*, 478 F.3d at 1117 (quoting *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th

Cir. 1995)).[9]

In addition to the Tenth Circuit cases directly on point, "[t]he consensus of persuasive authority from [The Tenth Circuit's] sister circuits…places the constitutional question in this case beyond debate." *Ullery v. Bradley*, 949 F.3d 1282, 1294 (10th Cir. 2020).[10] "Deliberately concealing or deliberately failing to disclose exculpatory evidence, like "maliciously tendering false information, can, as under the circumstances here present, form the basis for an inference that a defendant police officer acted with malice in initiating and maintaining a prosecution." *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992) (citation omitted).

"Jones was a § 1983 action for malicious prosecution against several members of the Chicago police force who conspired to frame an innocent George Jones for murder and rape…. Among the numerous defendants was a lab technician who concealed exculpatory blood, semen, The Seventh Circuit ruled "the jury could find that the defendants systematically concealed from

---

[9] Further, in 2011, the Tenth Circuit observed: "Nearly all of our sister circuits have also determined that police may be liable under § 1983 for failure to turn over *Brady* evidence…. [A]n investigator facing a § 1983 suit is liable…for information that he knew or should have known and failed to disclose to the prosecutor." *Tiscareno v. Anderson*, 639 F.3d 1016, 1023 (10th Cir. 2011), *vacated in part on other* grounds, 421 F. App'x 482 (10th Cir. 2011). In a footnote, the Tenth Circuit cited the following cases clearly establishing that police investigators can be liable under §1983 when they fail to disclose exculpatory evidence to prosecutors: *Moldowan v. City of Warren*, 578 F.3d 351, 378 (6th Cir. 2009*); Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1087 (9th Cir.2009); *Yarris v. Cty. of Del.*, 465 F.3d 129, 141 (3d Cir. 2006); *Wilson v. Lawrence Cty.*, 260 F.3d 946, 957 (8th Cir.2001); *Brady v. Dill*, 187 F.3d 104, 114 (1st Cir.1999); *McMillian v. Johnson*, 88 F.3d 1554, 1569 (11th Cir.1996); *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir.1992); *Geter v. Fortenberry*, 882 F.2d 167, 170 (5th Cir. 1989) ("A police officer cannot avail himself of a qualified immunity defense if he…deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles." (citation and alteration omitted)); *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir.1988).

[10] *See Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (In addition to circumstances where there is a U.S. Supreme Court or Tenth Circuit case on point, law may be clearly established when "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.").

the prosecutors, and misrepresented to them, facts highly material to—that is, facts likely to influence—the decision whether to prosecute Jones and whether (that decision having been made) to continue prosecuting him right up to and into the trial." *Jones*, 856 F.2d at 993. The Tenth Circuit's express adoption of the Seventh Circuit's analysis provides the relevant precedent that defeats Defendants' claim to qualified immunity here.

In another case with similar facts, the Fourth Circuit affirmed a jury verdict against a police officer for malicious prosecution under § 1983, holding that "a police officer who withholds exculpatory information from the prosecutor can be found liable under both § 1983 and the common law" for malicious prosecution. *Goodwin v. Metts*, 885 F.2d 157, 162–63 (4th Cir. 1989). The plaintiffs were arrested in connection with a break-in and charged with grand larceny. Between arraignment and trial, two discoveries cast doubt on whether probable cause still existed to believe that the plaintiffs had committed the crime. The police learned that the complaining witness had used a false name and address, and they could no longer locate him, and one of the officers discovered that another man had been arrested in a neighboring jurisdiction and had confessed to the crime for which the plaintiffs were charged. The officers failed to provide this information to the prosecutor, thus establishing liability against them for malicious prosecution for the continued confinement and prosecution of the plaintiff. 885 F.2d at 169–70.

Accordingly, Defendants knew or reasonably should have known that their conduct violated Plaintiff's right to be free from malicious prosecution.

**D.** **Defendants set in motion a series of events that they knew or reasonably should have known would cause Plaintiff's rights to be violated.**

"For liability under section 1983, direct participation is not necessary," as "[a]ny official who 'causes' a citizen to be deprived of [his] constitutional rights can…be held liable." *Buck v.*

*City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008) (citation omitted). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* at 1279-80 (citation omitted). The complaint's allegations and the reasonable inferences therefrom plausibly show that Defendants' conduct meet this standard.

The Tenth Circuit has sanctioned the use of "collective references to the defendants as a whole or to certain groups of defendants" as long as "view[ing] the collective allegations in tandem with [the plaintiff's] factual allegations elsewhere in the complaint, which identify specific actions taken by each individual [defendant]," is sufficient to "provide each individual [defendant] with fair notice as to the basis of the claims against him or her." *Bledsoe v. Carreno*, No. 20-3252, 53 F.4th at ___, ___, 2022 U.S. App. LEXIS 31579, at *27, 29-30 (10th Cir. Nov. 15, 2022) (citation omitted).[11] Plaintiff's allegations meet this standard, and are analogous to the allegations in *Mauchlin v. Davis*, which the court in that case found sufficient to state a claim against each individual defendant. In *Mauchlin*, the plaintiff "allege[d] a single constitutional violation regarding his confinement conditions and each of the…Defendant's failure to remedy the violation." No. 12-cv-01449-RM-BNB, 2014 U.S. Dist. LEXIS 143873, at *18-20 (D. Colo. Oct. 9, 2014). The court held that it was "proper for [the] Plaintiff to have made a single allegation as applicable to all [the] Defendants" because the basis of the claim—each Defendant's failure to remedy the plaintiff's confinement conditions—was similar. *Id.* at *19-20. Like *Mauchlin*, "reading in conjunction both the general and specific allegations," *id.* at *18, each Defendant here had fair notice of what each allegedly did.

---

[11] Paragraph 14 of the amended complaint states: "Officer Defendants Denison, Sisneros, Kelly, Hagan and Meoni are collectively known herein as 'Officer Defendants.'"

The three cases cited by Defendants–all decided on motions for summary judgment after discovery–are distinguishable or do not support Defendants' argument. *Snell v. Tunnell*, 920 F.2d 673, 700-702 (10th Cir. 1990), addressed supervisory liability, in which, unlike here, the defendants did not have direct involvement in the constitutional violation and causation was therefore more attenuated. Nonetheless, the Tenth Circuit cited various depositions as sufficient evidence to show each defendant's conduct and its causal link to the plaintiff's injury, and denied the motion for summary judgment.

*Vasquez v. Davis*, 882 F.3d 1270 (10th Cir. 2018), is distinguishable because it involved several Colorado Department of Corrections medical providers who were sued for deliberate indifference for failing to provide medical care to the plaintiff, a prisoner. Following discovery, the defendants raised a statute of limitations defense, which required the court to parse out (based upon the depositions) which of the defendants' committed acts and omissions fell within the two-year statute-of-limitations period–not an issue here. As in *Snell*, the district court examined the discovery materials submitted by the parties, including depositions. Notably, at the pleading stage of the case, the district court had denied the Rule 12(b)(6) motion even as to defendants whose summary judgment motion was later granted. See *Vasquez v. Davis*, No. 14-CV-01433-WJM-CBS, 2015 U.S. Dist. LEXIS 148279, 2015 WL 6662921 (D. Colo. Nov. 2, 2015).

*Schneider v. City of Grand Junction Police Dep't.* 717 F.3d 760, 768 (10th Cir. 2013), also involved the question of supervisory liability, a subject on which the U.S. Supreme Court had recently spoken in *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). The Tenth Circuit did not even decide the issue of personal participation because after reviewing the Circuit's prior cases and observing that the Circuit had "not yet had occasion to determine what allegations of

personal involvement ... meet *Iqbal* 's stricter [supervisory] liability standard," the court

observed:

> None of those cases…presented us with the occasion to address the precise contours of this standard. And neither does this case. None of the claims against the individual defendants turns on the question of personal involvement. The district court's summary judgment conclusions were based on the second and third elements, causation and state of mind, and the parties' arguments also are focused on these latter elements. We therefore assume without deciding that Ms. Schneider has presented sufficient evidence of the individual defendants' personal involvement under *Iqbal* 's stricter liability standard.

*Id.* at 768.

Accordingly, at the pleading stage, this Court should find that the amended complaint's

allegations and the reasonable inferences therefrom are more than sufficient to plausibly allege

the personal participation of each Defendant.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss must be denied.

Respectfully submitted this 28th day of November 2022.


  s/David A. Lane_____
David A. Lane
Liana G. Orshan
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
(303) 571-1001 facsimile
dlane@kln-law.com
lorshan@kln-law.com

Jane Fisher-Byrialsen
Fisher & Byrialsen, PLLC
4600 S. Syracuse Street, 9th Floor
Denver, CO 80237
Phone: (303) 256-6345
Email: Jane@FBLaw.org

Hollis A. Whitson
Samler and Whitson, PC
1600 Stout Street, Suite 1400
Denver, CO 80202
Phone: 303-670-0575
Email: Hollis@SamlerandWhitson.com

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 28, 2022, I filed a copy of the foregoing **RESPONSE TO DEFENDANTS' MOTION TO DISMISS [ECF # 21]**, via CM/ECF which will send an electronic Notice of Electronic Service to counsel at the following addresses:

Katherine M. Field
Jonathan Cooper
Jeremy Tyrell
Denver City Attorney's Office
201 W. Colfax Ave.
Denver, CO 80202
kate.field@denvergov.org
jonathan.cooper@denvergov.org
jeremy.tyrell@denvergov.org

*/s/ Charlotte Bocquin Scull*
Paralegal