IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-01960-CNS-KLM

MICHA KIMBALL,

    Plaintiff,

v.

DANIEL FOX, Officer,
JAMI SISNEROS, Officer,
RANDAL DENISON, Officer,
SEAN KELLY, Officer,
SCOTT HAGAN, Officer,
JOHN MEONI, Officer,
PAUL PAZEN, Denver Police Department Chief,
THE DENVER POLICE DEPARTMENT, and
CITY OF DENVER, COLORADO,

    Defendants.

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff Micha Kimball's Amended Complaint (ECF No. 21). For the reasons set forth below, the Court DENIES in part and GRANTS in part Defendants' Motion to Dismiss.

### I. BACKGROUND[1]

A brief summary of the Amended Complaint's allegations suffices. On September 27, 2019, Mr. Kimball's fiancé, Michelle Jacobsen, committed suicide in their home (ECF No. 1-19

---

[1] The background facts are taken from the well-pleaded allegations in Mr. Kimball's Amended Complaint. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1247 n.1 (10th Cir. 2019).

1

at 1, 4 ¶¶ 1, 20). Mr. Kimball called the police, seeking emergency assistance (*Id.*). He was later arrested and accused of murdering and falsely imprisoning Ms. Jacobsen (ECF No. 1-19 at 4 ¶ 21). In the course of an investigation into Ms. Jacobsen's death—which involved blood splatter and gunshot residue analyses—authorities determined that collected evidence was "consistent with a suicide" (*Id.* at 5 ¶ 31; *see also id.* at 4-5, 15 ¶¶ 23-25, 43).

In the course of the investigation into Ms. Jacobsen's death, Officer Defendants Denison, Sisneros, Kelly, Hagan, and Meoni (the "Officer Defendants") failed to adequately question Mr. Kimball's neighbor regarding Mr. Kimball's alleged imprisonment of Ms. Jacobsen, review home surveillance cameras, and otherwise diligently investigate Ms. Jacobsen's death (*See, e.g.,* ECF No. 1-91 at 11, 14 ¶¶ 14, 38-39). The Officer Defendants' failure to diligently investigate Ms. Jacobsen's death "precluded investigation" by crime scene investigators that "would have exonerated Mr. Kimball" (*Id.* at 14 ¶ 38). The Officer Defendants also made false statements that were then relied upon by the state court, prosecution, and forensic pathologist's office in prosecuting Mr. Kimball's state court criminal case (*Id.* at 15 ¶ 44). Defendants' investigative failures "clearly showed there was no probable cause" to arrest Mr. Kimball, charge him with any crimes related to Ms. Jacobsen's death, detain him, and bring him to trial (*Id.* at 15 ¶ 46).

Mr. Kimball filed this civil action in state court in December 2021, bringing claims for unlawful seizure, malicious prosecution, failure to intervene, and conspiracy under Colorado law (*See* ECF No. 1-1). Defendants moved to dismiss Mr. Kimball's claims in February 2022, after which Mr. Kimball filed a Motion to Amend and proposed Amended Complaint in state court in

July 2022 (*See* ECF Nos. 1-11, 1-19).[2] In his Amended Complaint, Mr. Kimball added a claim against Defendants under 42 U.S.C. § 1983 (ECF No. 1-19 at 20). On this basis and pursuant to 28 U.S.C. § 1441(a), Defendants timely removed this action to federal court (*See* ECF No. 1 at 2). After removing this action to federal court, Defendants filed the instant Motion to Dismiss (ECF No. 21). The Motion is fully briefed (*See* ECF Nos. 28, 33).[3]

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of

---

[2] Defendants do not contest that the Amended Complaint is the operative complaint in this action (*See, e.g.,* ECF Nos. 1 at 2 n.1, 17 at 2-3).

[3] In his Response to Defendants' Motion to Dismiss, Mr. Kimball voluntarily dismissed his "unlawful seizure claims and his claims against the City and County of Denver and Defendant Pazen" (ECF No. 28 at 2 n.1). Mr. Kimball did not name Defendant Daniel Fox, originally named as a Defendant in the Complaint, as a Defendant in his Amended Complaint (*Id.*; *see also* ECF No. 1-19 at 8). Therefore, Defendant Fox is no longer a Defendant in this action. To the extent there were any claims against Defendant Fox, those claims are dismissed without prejudice.

3

truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Having reviewed the Amended Complaint, Defendants' Motion to Dismiss, related briefing, and relevant legal authority, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**A. Issue Preclusion**

Defendants argue that the state court's probable cause finding is preclusive and compels dismissal of Mr. Kimball's claims (ECF No. 21 at 7). Mr. Kimball argues that Defendants cannot meet their burden of showing that the state court's probable cause findings preclude his civil action, and that Defendants are not "entitled to collateral estoppel" (ECF No. 28 at 4). After setting forth the governing legal standard, the Court explains why it agrees why it disagrees with Mr. Kimball.

*1. Legal Standard*

Under the doctrine of collateral estoppel, or issue preclusion, "[f]ederal courts must give to a state court judgment the preclusive effect that would be given under the law of the state in which the state court judgment was rendered." *Ziankovich v. Large*, No. 17-CV-02039-CMA-NYW, 2019 WL 4463283, at *6 (D. Colo. Sept. 18, 2019) (citation omitted); *see also Allen v. McCurry*, 449 U.S. 90, 95 (1980) ("The federal courts generally have also consistently accorded

4

preclusive effect to issues decided by state court." (citation omitted)); *Bolling v. City & Cnty. of Denver, Colo. By & Through McNichols*, 790 F.2d 67, 68 (10th Cir. 1986); 28 U.S.C. § 1378.

Because the underlying state court action occurred in Colorado, Colorado preclusion law apply applies. *See, e.g., In re Riggle*, 389 B.R. 167, 173 (D. Colo. 2007), *as amended* (Aug. 15, 2007) ("As this appeal arises out of a judgment of a Colorado District Court, Colorado law determines the preclusive effect of the state judgment."). Under Colorado law, issue preclusion applies where:

1. The issue precluded is identical to an issue "actually litigated and necessarily adjudicated" in the prior proceeding;

2. The party against whom estoppel was sought was a party to "or was in privity with" a party to the prior proceeding;

3. There was a final judgment on the merits in the prior proceeding; and

4. The party against whom issue preclusion is asserted had a "full and fair opportunity" to litigate the issues in the prior proceeding

*Gallegos v. Colorado Ground Water Comm'n*, 147 P.3d 20, 32 (Colo. 2006), *as modified on denial of reh'g* (Dec. 4, 2006) (citation omitted). "The burden of establishing these elements rests with the party seeking preclusion." *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999) (citation omitted).

### 2. Analysis & Identical Issues

Defendants contend that the issue central to Mr. Kimball's civil action—whether there was probable cause to arrest him—was fully litigated and decided by the state court judge in the state court proceeding (ECF No. 21 at 8-9). Mr. Kimball contends that the "identical" and "actually litigated" issue preclusion element is not met when a defendant attempts to preclude a plaintiff's

5

civil action based on a probable cause determination in a former criminal action (ECF No. 28 at 9). The Court agrees with Mr. Kimball.

"For an issue to be actually litigated," as required under the first issue preclusion element, "the parties must have raised the issue in the prior action." *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999) (citation omitted). "A legally raised issue is one that a party, by appropriate pleading, asserts through a claim or cause of action against the other." *Id.* (citation omitted). The raised issue must also have been "submitted for determination and then actually determined by the adjudicatory body." *Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1280 (Colo. 2006) (quotations omitted). To be "necessarily adjudicated," the issue must have "affected the disposition of the case." *Id.* (citation omitted). Under the first issue preclusion element, an issue is "identical" if either "the facts or the legal matter raised is the same." *Youngs v. Indus. Claim Appeals Off.*, 297 P.3d 964, 974 (Colo. App. 2012), *as modified on denial of reh'g* (July 19, 2012) (citation omitted).

Assuming the probable cause issue was actually litigated in the state court proceeding, Defendants have not met their burden of showing that the probable cause issue litigated and adjudicated in the state court proceeding is identical to the probable cause issue this federal civil action presents. In support of their argument that the "exact issue" of whether Mr. Kimball's arrest was supported by probable cause was already decided by the state court judge in Mr. Kimball's criminal proceeding, Defendants point to the state court judge's sanctions order (ECF No. 21 at 8; ECF No. 21-1). In that order, the state court judge determined: "Having reviewed [newly turned over] evidence and reviewing my notes from the [preliminary hearing], I do not find that the evidence is of such significance that I would not have bound over the case on the charge of Murder

6

in the First Degree" (ECF No. 21-1 at 1).[4] According to Defendants, the state court judge's probable cause determination, articulated in the sanctions order, "preclude[s] relitigation" of the issue of whether there was probable cause to arrest Mr. Kimball for his claims in this federal civil action (ECF No. 21 at 8 (quotations omitted)).

The state court judge's statements in the sanctions order, however, do not render the probable cause issue litigated and adjudicated in the underlying state criminal action identical to the probable cause issue presented in this federal civil action. Mr. Kimball's citation to *Schenck v. Minolta Off. Sys., Inc.*, 802 P.2d 1131, 1134–35 (Colo. App. 1990), is instructive (ECF No. 28 at 8). There, the Colorado Court of Appeals concluded that the issue in a preliminary hearing "was whether the state had probable cause to believe [the] plaintiff committed a crime, [whereas] in [a] malicious prosecution proceeding, the issue was whether the *defendants* had probable cause to believe [the] plaintiff committed the crime." *Id.* (citation omitted) (emphasis added). For this reason, the Colorado Court of Appeals concluded that the probable cause issue presented in the preliminary hearing and the malicious prosecution hearing were not identical for issue preclusion purposes. *See id.*

The Court finds *Schenck*'s reasoning persuasive and applicable to this case. In the underlying state court proceeding, the state court judge's sanction order repeatedly discusses the "People," the "Prosecution," and "the government's case" (ECF No. 21-1 at 1). These statements are clear indicia that the state court judge's determination concerned the state's probable cause to arrest Mr. Kimball. In this federal civil action, Mr. Kimball's claims present the factually dissimilar issue of whether the Officer Defendants had probable cause to arrest him (*See, e.g.,* ECF

---

[4] As discussed further below, the Court may take judicial notice of the state court judge's sanctions order.

7

No. 1-19 at 2, 18 ¶¶ 2, 74). Therefore, Defendants have failed to meet their burden of showing that the state court judge's determination regarding the *state*'s probable cause is identical to the issue this case presents: whether the Officer Defendants had probable cause to arrest Mr. Kimball.[5] *See Schenck*, 802 P.2d at 1134–35; *but see Young*, 297 P.3d at 974 (issue preclusion applies where two proceedings "involve the *same* underlying factual issue" (citation omitted) (emphasis added)).

For the reasons set forth above, Defendants have not met their burden of establishing the first issue preclusion element. *See Gallegos*, 147 P.3d at 32; *Bebo*, 990 P.2d at 85. Therefore, the Court need not address Defendants' arguments regarding the remaining issue preclusion elements. Mr. Kimball's claims are not precluded under the doctrine of issue preclusion by the state court judge's probable cause determination.[6] The Court will now turn to its analysis of Mr. Kimball's specific claims.

---

[5] Other courts have applied *Schenck* in similar factual contexts. *See, e.g., Haskett v. Flanders*, No. 13-CV-03392-RBJ-KLM, 2015 WL 128156, at *10 n.8 (D. Colo. Jan. 8, 2015).

[6] Defendants contend that, even if the state court judge's probable cause determination is not given a preclusive effect as a matter of issue preclusion, it creates a "rebuttable presumption" of probable cause that the Amended Complaint cannot rebut, and therefore Mr. Kimball cannot state plausible claims for relief (See ECF No. 21 at 12). To be sure, the Court agrees with Defendants that it may take judicial notice of the state court judge's sanctions order (ECF No. 33 at 6). *See, e.g., St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp*., 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citations omitted)). But the Court may not take judicial notice "for the truth of the facts recited" in the sanctions order—including the probable cause determination and the state court judge's reasons for making it—only "for the existence" of the state court judge's sanctions order. *The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (quotation omitted). As such, the Court agrees with Mr. Kimball that, even if the Court considers the sanctions order at the motion to dismiss stage, it does not warrant dismissal of his claims on the basis of rebuttable presumption regarding probable cause (See ECF No. 28 at 11-12, 14). *See also Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1252 (D. Colo. 2015) (taking judicial notice of "three filings" and noting that "the [c]ourt can only consider their existence, which is limited to the nature of the form and the filing date"). Defendants' argument to the contrary—that the Court may consider the facts of the state court's sanctions order based on their contradiction of the Amended Complaint's allegations—is unavailing, given that the Amended Complaint does not refer to the sanctions order. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

### B. Qualified Immunity & Malicious Prosecution

Defendants contend that dismissal of Mr. Kimball's § 1983 malicious prosecution claim is warranted on qualified immunity grounds (ECF No. 21 at 14). First, the Court sets forth the legal standards governing qualified immunity and § 1983 malicious prosecution claims. Second, the Court considers Defendants' arguments regarding their entitlement to qualified immunity on Mr. Kimball's malicious prosecution claim.

#### 1. Legal Standards

When a defendant asserts qualified immunity, the plaintiff must show that the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the defendant's challenged conduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation omitted). The Court may address either prong first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). A plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), but clearly established law must place the constitutional issue "beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 16 (2015) (quotation omitted). In its analysis of a defendant's motion to dismiss, courts consider whether a complaint's well-pleaded factual allegations and related inferences allege an officer violated a clearly established constitutional right. *See Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016) (citation omitted).

To set forth a § 1983 malicious prosecution claim, a plaintiff must allege: (1) the defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *See Sanchez*, 810 F.3d at 754 n.1. The "favorable termination" element only requires a plaintiff to show that their criminal prosecution "ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).

### 2. Constitutional Violation

Defendants contend that they are entitled to qualified immunity because Mr. Kimball has not adequately alleged that any Officer Defendant violated his constitutional rights (ECF No. 21 at 15). In support of this contention, Defendants make three arguments: (1) Mr. Kimball has failed to allege a "an absence of probable cause" for his arrest; (2) he has pleaded "no facts that establish malice;" and (3) the Amended Complaint's allegations do not demonstrate that the Defendants "caused his continued confinement or prosecution" (ECF No. 21 at 15). Mr. Kimball argues that he has stated a plausible violation of his constitutional rights because he has adequately alleged facts that satisfy these elements of his § 1983 malicious prosecution claim (*See, e.g.,* ECF No. 28 at 17, 21). The Court agrees with Mr. Kimball, considering and rejecting Defendants' arguments in turn.

***Probable Cause***. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). In determining whether an officer had probable cause for an arrest, courts examine the events "leading up to the arrest," and determine whether these "historical facts," from the point of view of an "objectively reasonable officer,

10

amount to probable cause." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotations omitted). These "historical" facts amount to probable cause if they are sufficient to warrant a person of "reasonable caution" to believe an offense "has been or is being committed." *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quotations omitted). Although this "belief" that gives rise to probable cause must be rooted in a "substantial probability" that an offense has been or is being committed—rather than a "bare suspicion"—probable cause is "not a high bar." *Id.* (quotations omitted).

Defendants advance several arguments regarding Mr. Kimball's failure to satisfy the third element of his malicious prosecution claim: that no probable cause supported his original arrest (*See* ECF No. 21 at 15-20). These arguments are unavailing. The Court agrees with Mr. Kimball that no probable cause existed prior to his prosecution, as well as that Defendants continued to learn information that dissipated any probable cause to continue Mr. Kimball's confinement or prosecution (*See* ECF No. 28 at 19).

First, the Amended Complaint alleges that on the night of Ms. Jacobsen's death, he was "arrested and accused of murdering and falsely imprisoning" Ms. Jacobsen (ECF No. 1-19 at 11 ¶ 21). According to Mr. Kimball, Defendants based their decision to arrest him for falsely imprisoning Ms. Jacobsen on the testimony of Mr. Kimball's neighbor (*See id.* at 14 ¶ 39). However, "[n]one of the Officer Defendants questioned" the neighbor's statements, reviewed the home surveillance footage, or "found any signs of foul play in or around the garage" that would have given rise to probable cause to arrest for false imprisonment (*Id.*). *Cf. Romero v. Fay*, 45 F.3d 1472, 1476–77 (10th Cir. 1995) ("[T]he probable cause standard of the Fourth Amendment requires officers to *reasonably interview* witnesses readily available at the scene, *investigate* basic

11

evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." (footnote omitted) (emphasis added)). Mr. Kimball further alleges that, not only did the Defendants fail to adequately investigate, they also "refused to allow the crime scene expert to take measurements of the blood stains and take pictures of the scene" (ECF No. 1-19 at 14 ¶ 38). Accepting the Amended Complaint's allegations as true and interpreting them in the light most favorable to Mr. Kimball, *see Mayfield*, 826 F.3d at 1255, he has adequately alleged that Defendants did not investigate basic evidence at the crime scene or reasonably interview Mr. Kimball's neighbor in a manner that would have permitted a person of "reasonable caution" to believe that Mr. Kimball had falsely imprisoned Ms. Jacobsen, so as to give rise to the necessary probable cause to arrest for false imprisonment. *See Hinkle*, 962 F.3d at 1220 (quotations omitted); *see also Cortez v. McCauley*, 478 F.3d 1108, 1117–18 (10th Cir. 2007) (noting that warrantless arrest amounted to constitutional violation where defendants "conducted no investigation . . . . [i]nstead, [they] relied on the flimsiest information"). The Court's conclusion is bolstered by the Defendants' alleged interference with crime scene analysts' ability to analyze the scene of Ms. Jacobsen's death (*See, e.g.,* ECF No. 1-19 at 14 ¶ 38).

Second, the Amended Complaint alleges that crime scene analyst Angela Deadmond told the Defendants that the crime scene evidence demonstrated that Ms. Jacobsen's "gunshot wound was self-inflicted" (ECF No. 1-19 at 2, 12 ¶¶ 1 n.1, 28). The Officer Defendants were aware that the Denver Crime Lab's Summary Report demonstrated that there was no gunshot residue on Mr. Kimball's hands or face (*Id.* at 12 ¶ 25). Further, after learning that Ms. Jabosen's death was not a homicide, Defendants allegedly omitted this information from various "reports, testimony, and other communications" (*Id.* at 15 ¶¶ 43-44). These allegations are sufficient to demonstrate that

no probable cause existed to sustain the continued confinement and prosecution of Mr. Kimball for the alleged murder of Ms. Jacobsen for purposes of the "probable cause" element of his malicious prosecution claim. *See, e.g., Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018) ("To state a § 1983 claim for malicious prosecution, a plaintiff must show . . . no probable cause supported the original arrest, continued confinement, *or* prosecution." (citation omitted) (emphasis added)); *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) ("[F]alsification of inculpatory evidence or suppress[ion] of exculpatory evidence that was necessary to the finding of probable cause would establish the lack of probable cause element." (quotations and citation omitted)).

*Malice.* The parties dispute whether Mr. Kimball has satisfied the "malice" element of his § 1983 malicious prosecution claim (*Compare* ECF No. 21 at 20, *with* ECF No. 28 at 21). The Court agrees with Mr. Kimball that he has satisfied the "malice" requirement for his § 1983 malicious prosecution claim. "The fourth element of a malicious prosecution claim, malice, may be inferred from a lack of probable cause." *Cronick v. City of Colorado Springs*, No. 20-CV-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. Jan. 13, 2022) (citing *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014)). As discussed above, Mr. Kimball has adequately alleged a "lack of probable cause." *Cronick*, 2022 WL 124751, at *6. Accordingly, he has satisfied the "malice" element of his malicious prosecution claim. *See also Chavez-Torres v. City of Greeley*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at *4 (D. Colo. Apr. 21, 2015) ("Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient facts to plausibly find that [the defendant] was motivated by malice." (citation omitted)).

*Causation.* Defendants contend that Mr. Kimball has failed to satisfy the "causation" element of his § 1983 malicious prosecution claim because he has not alleged factual content "to support causation as to any individual Defendant" (ECF No. 21 at 21). Mr. Kimball argues that he has plausibly alleged that Defendants "caused his damages" (ECF No. 28 at 22). The Court agrees with Mr. Kimball.

Mr. Kimball identifies numerous allegations in the Amended Complaint demonstrating that the Officer Defendants "caused his continued confinement or prosecution." *Montoya*, 898 F.3d at 1066 (quotations omitted). The Court agrees that these allegations satisfy the causation requirement. For instance, the Amended Complaint alleges that Defendants Meoni and Sisneros made false statements regarding Ms. Jacobsen's autopsy to District Attorney Dan Cohen (ECF No. 1-19 at 13 ¶ 34). And Defendants allegedly knew that crime scene evidence "did not support a theory of homicide," but nonetheless concealed information regarding the nature of Ms. Jacobsen's death from other officers, the forensic pathologist's office, and the state prosecution's office (ECF No. 1-19 at 15 at ¶ 44). Accordingly, reading Mr. Kimball's allegations in the content of the entire Amended Complaint, *see Chilcoat*, 41 F.4th at 1207, Mr. Kimball has satisfied the "causation" requirement for his § 1983 malicious prosecution claim. *See, e.g., Cronick*, 2022 WL 124751, at *6 (concluding first element of malicious prosecution claim met where the plaintiff "sufficiently allege[d] that [the officer defendants] effectuated her arrest, that [another defendant] elected to cite and summons [the plaintiff] for failure to desist or disperse, and that all three [d]efendants participated in the continued criminal prosecution of [the plaintiff]"); *see also Stonecipher*, 759 F.3d at 1147 ("[A] prosecutor's decision to indict and prosecute [a] plaintiff did not shield [an

employee], who flagrantly misrepresented evidence to the prosecutor, from liability for malicious prosecution." (citing *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004)).[7]

For the reasons set forth above, Mr. Kimball has satisfied the first, third, and fourth elements of his § 1983 malicious prosecution claim, surviving Defendants' motion to dismiss his claim on the grounds that he has not adequately alleged a constitutional violation.

### 3. Clearly Established

Defendants argue that Mr. Kimball has additionally failed to demonstrate that the Officer Defendants violated any "clearly established" right, as he must do to survive their assertion of qualified immunity (ECF No. 21 at 22). Mr. Kimball contends that his right to be free from malicious prosecution based on the falsification or omission of evidence is clearly established (*See, e.g.,* ECF No. 28 at 28). The Court agrees with Mr. Kimball. His right to be free from malicious prosecution based on the Officer Defendants' conduct was clearly established. *See, e.g., Pierce*, 359 F.3d at 1300 ("[A]s alleged, [the defendant] engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man. Such conduct, if it can be proven at trial, violated [the plaintiff's] constitutional rights with obvious clarity." (quotations omitted)); *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2020); *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022) ("[The plaintiff] alleged a § 1983 malicious prosecution claim against [d]efendants . . . .

---

[7] Mr. Kimball further alleges that Defendants Hagan and Denison "precluded" a crime scene investigation, as well as refused to allow crime scene experts to "take measurements of the blood stains" at the crime scene that "would have exonerated" Mr. Kimball (ECF No. 1-19 at 14 ¶ 38). These allegations, coupled with the allegations discussed above, demonstrate that Defendants err in arguing that Mr. Kimball has failed to allege that the Officer Defendants were personally involved in the violation of his constitutional rights (*See* ECF No. 21 at 29-30). Mr. Kimball has sufficiently alleged "specific actions taken by particular defendants," therefore sustaining his § 1983 claim. *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quotations omitted) (emphases omitted); *see also Montoya v. City & Cnty. of Denver*, No. 21-1107, 2022 WL 1837828, at *5 (10th Cir. June 3, 2022) (concluding that plaintiff satisfied burden to allege "personal participation" in *Franks* violation where he "specifically alleged" the conduct of three detectives rather than "indiscriminately lodg[ing] 'collective allegations against the state'" (quoting *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011)).

15

[because a] constitutional malicious prosecution claim was clearly established by 1999." (citations omitted)); *Chavez-Torres*, 2015 WL 1850648, at *7 (D. Colo. Apr. 21, 2015) (stating that "several Tenth Circuit cases have made clear that an instance of malicious prosecution undertaken without probable cause constitutes a constitutional violation," and concluding that "the right to be free from malicious prosecution is clearly established under Tenth Circuit law." (collecting cases)).

Therefore, Mr. Kimball has met his burden of satisfying his constitutional right was "clearly established" under the second qualified immunity prong. *See Cummings*, 913 F.3d at 1239.

\* \* \*

For the reasons set forth above, Mr. Kimball has met his burden of showing that Defendants violated his constitutional right and that his constitutional right was clearly established. *See Cummings*, 913 F.3d at 1239. Accordingly, Defendants are not entitled to qualified immunity on Mr. Kimball's § 1983 malicious prosecution claim.

### C. Law Enforcement Integrity Act & Retroactivity

Defendants essentially argue that Colorado's Law Enforcement Integrity Act (the "LEIA") bars Mr. Kimball's state law claims because the LEIA cannot be retroactively applied, as well as that Mr. Kimball's claims fall outside the applicable statute of limitations (ECF No. 21 at 21; *see also* ECF No. 33 at 9). Mr. Kimball argues that his state malicious prosecution claim did not accrue until August 2020—within the statute of limitations period—and that dismissal of his malicious prosecution claim on retroactivity grounds is unwarranted (ECF No. 28 at 15; *see also id.* at 16 n.6). The Court agrees with Mr. Kimball.[8]

---

[8] The Court notes that Defendants move to dismiss Mr. Kimball's "First through Third Claims" for relief under state law (ECF No. 21 at 23). Mr. Kimball voluntarily dismissed his first claim for unlawful seizure (ECF No. 28 at 2 n.1). In his Response, Mr. Kimball appears to argue only that dismissal of his second state law claim—his claim for malicious prosecution—is unwarranted (ECF No. 28 at 15-16). Mr. Kimball does not argue in his Response that

First, the Court agrees with Mr. Kimball that his state malicious prosecution claim did not accrue until August 2020, when he was acquitted and the state court proceedings terminated in his favor (ECF No. 28 at 15; *see also* ECF No. 1-19 at 15 ¶ 48). *See also Schenck*, 802 P.2d at 1133; *Thompson v. Maryland Cas. Co*., 84 P.3d 496, 504 (Colo. 2004). Mr. Kimball initiated this action in December 2021 (*See, e.g.,* ECF No. 1-19 at 1). As such, Mr. Kimball's state malicious prosecution claim falls within the applicable statute of limitations and is not time-barred. *See* C.R.S. § 13-80-102(1)(a); *see also* C.R.S. § 13-21-131(5).

Second, the Court disagrees with Defendants that application of the LEIA in this case would have an impermissible, retroactive effect (ECF No. 21 at 24; *see also id.* at 25 n.8). According to Defendants, enforcing the LEIA and Mr. Kimball's accrued malicious prosecution claim would "alter the rights and liabilities of Defendants" for their past conduct by imposing "new and additional liability" for their alleged misconduct in 2019, before Mr. Kimball was acquitted, and depriving them of the "right" to the Colorado Governmental Immunity Act's (the "CGIA's") notice requirement and the qualified immunity defense (ECF No. 21 at 25 n.8). *Cf.* C.R.S. § 24-10-109(1). Not so.

As a threshold matter, even though some of the events giving rise to Mr. Kimball's state malicious prosecution claim occurred before August 2020, when he was acquitted, "[a]pplication of a statute is not rendered retroactive and unlawful merely because the facts upon which it operates occurred before adoption of the statute." *Colorado Dep't of Soc. Servs. v. Smith, Harst & Assocs.,*

---

Defendants err in arguing that dismissal of his third and final state law claim for conspiracy is appropriate. For this reason, the Court focuses its analysis on Mr. Kimball's state law claim for malicious prosecution. And given that Mr. Kimball has made no argument regarding his conspiracy claim, the Court construes Mr. Kimball's absence of argumentation as a concession that dismissal of his conspiracy claim is appropriate. *See, e.g, Forgacs v. Eye Care Ctr. Of N. CO*, No. 04 CV 1124 JLK, 2007 WL 552239, at *5 (D. Colo. Feb. 20, 2007) ("In her response to the motion for sanctions, [the plaintiff] makes no argument to support a claim . . . and effectively concedes the argument.").

17

*Inc.*, 803 P.2d 964, 966 (Colo. 1991). And unlike substantive statutory amendments or enactments, which may not be retroactively applied, LEIA's provision regarding the inapplicability of the CGIA's notice requirement "relate[s] only to the . . . modes of procedure to enforce . . . rights or liabilities" under the LEIA. *Vandiver v. MG Billing Ltd.*, No. 1:21-cv-02960-CNS-MDB, 2023 WL 1437889, at *4 (D. Colo. Feb. 1, 2023) (citing *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo. 1993)). Similarly, the LEIA's provision regarding qualified immunity does not impair a vested right that makes the LEIA's application impermissible in Mr. Kimball's case.[9] *See* C.R.S. § 13-21-131(1)(b); *see also, e.g., Hickman v. Cath. Health Initiatives*, 328 P.3d 266, 271 (Colo. App. 2013) (determining that "no person has a vested right in any rule of law entitling that person to insist it shall remain unchanged for his or her future benefit," and that a "right is only vested" for retroactivity purposes "when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence." (quotations omitted)). As a legal defense, "qualified immunity" is not "a contract right, a property right, or a right arising from a transaction in the nature of a contract" that would qualify it as a vested right. *Id.* (quotations omitted). *See also Nye v. Indus. Claim Appeals Off. of State of Colo.*, 883 P.2d 607, 609 (Colo. App. 1994) ("To be vested, a right must consist of more than a mere expectation based on the anticipation of the continuance of a legal status, and in the usual case, no person has a vested right in any rule of law entitling that person to insist it shall remain unchanged for his or her future benefit.").

---

[9] This is particularly true in this case, where the Court has concluded that Defendants are not entitled to qualified immunity on Mr. Kimball's § 1983 claim.

Therefore, for the reasons set forth above, Mr. Kimball's state law malicious prosecution claim is not time-barred, and application of the LEIA in this action is not impermissibly retroactive.

## IV. CONCLUSION

Consistent with the above analysis, Defendants' Motion to Dismiss (ECF No. 21) is GRANTED in part and DENIED in part.[10] Because Mr. Kimball has not named Defendant Fox in his Amended Complaint, his claims against Defendant Fox are also DISMISSED. Pursuant to Mr. Kimball's voluntary dismissal, Mr. Kimball's first claim for unlawful seizure is DISMISSED, and Mr. Kimball's claims against the City and County of Denver and Defendant Pazen are DISMISSED. Mr. Kimball's third claim for conspiracy is also DISMISSED. The remainder of Defendants' Motion to Dismiss is DENIED.

DATED this 22nd day of February 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[10] The Court makes one final note. Defendants' Motion to Dismiss, filed in August 2022, is thirty-two pages long (*See* ECF No. 21 at 1-32). Mr. Kimball's Response, filed in November 2022, is thirty-five pages long (*See* ECF No. 28 at 1-35). Had the parties' briefs been filed after the Court implemented its Uniform Civil Practice Standards in December 2022, these briefs—based on their remarkable length—would have been in violation of Civ. Practice Standard 10.1(c)(1). Going forward, the parties are informed that any brief that fails to comply with the Court's Uniform Civil Practice Standards will be promptly stricken.